ROBERT BUTLER *vs.* DIRECTORS OF THE PORT OF BOSTON.

Suffolk. March 26, 1915. — September 16, 1915.

Present: RUGG, C. J., LORING, BRALEY, DE COURCY, PIERCE, & CARROLL, JJ.

*Mandamus. Civil Service. Fraud.*

On a petition for a writ of mandamus commanding the directors of the port of Boston to reinstate the petitioner as their mechanical foreman, where the respondents demurred to the petition, which alleged plainly that the petitioner when holding the position of mechanical foreman of the respondents made an

application in writing to be transferred to the position of engineer in charge of the heating plant and that he so was transferred in accordance with his own request, it was *held* that the petition stated no ground for the petitioner's reinstatement as mechanical foreman unless it contained allegations showing that the petitioner's application to be transferred to the position of engineer in charge of the heating plant was induced by fraud and that he was not bound by it.

The petition referred to above alleged that the petitioner's "action in applying for a transfer as engineer in charge of the heating plant was taken upon his understanding and belief that the charges preferred [against him as mechanical foreman] would be dismissed, was caused by misrepresentation of the directors of the port of Boston, and because the petitioner was fearful on account of the manifest antagonism of the directors of the port of Boston towards him he would lose his employment entirely." The petition contained no specifications of untrue statements made by any of the respondents before the petitioner made his application for transfer. There were averments that, previously to a hearing by the respondents upon the charges above referred to, the clerk of the respondents incorrectly informed the petitioner that the charges against him had been withdrawn and that this information proved to be inaccurate and the hearing took place, but it was not alleged that the clerk made the inaccurate statement by the direction or with the knowledge of the respondents. There was no allegation that showed any unfair treatment of the petitioner by the respondents at the hearing, and none that showed any manifest antagonism on the part of the respondents toward the petitioner which rightly could have induced him to ask for a transfer. There was a final general allegation that the suggestion that the petitioner should apply for the transfer was "a device and subterfuge urged upon him" by the chairman of the respondents in order to accomplish his removal as mechanical foreman and that "all of the actions of the directors . . . were intended to trick and deceive him, and that he was duped and deceived throughout the entire transaction." *Held*, that the general allegations were too vague and indefinite to constitute an averment of legal fraud, and that, in the absence of any specific averments of fraud practiced upon the petitioner by the respondents, the demurrer must be sustained.

It is the general rule that the court will not issue a writ of mandamus where adequate relief can be had by resorting to some other remedy. This principle applies to questions relating to removals, abolitions of positions and reductions of pay in the civil service which may be reviewed in proceedings under St. 1911, c. 624.

PETITION, filed on February 18, 1915, for a writ of mandamus commanding the directors of the port of Boston to reinstate the petitioner as their mechanical foreman as of the date of August 5, 1914.

The answer of the respondents incorporated a demurrer which stated as the first ground of demurrer that the petitioner alleged no facts entitling him to the relief which he sought.

The case was heard by *Crosby*, J., who ordered that the demurrer be sustained on the first ground alleged therein and that the petition be dismissed; and, at the request of the petitioner assented

to by the respondents, reported the case for determination by the full court.

The case was argued at the bar in March, 1915, before *Rugg,* C. J., *Loring, Braley, & Pierce,* JJ., and afterwards was submitted on briefs to all the justices except *Crosby,* J.

*F. W. Mansfield,* for the petitioner.

*H. W. Barnum,* Assistant Attorney General, for the respondents.

RUGG, C. J.   This is a petition for a writ of mandamus.   It was heard on a demurrer embodied in an answer.   For the purposes of this discussion the facts well pleaded in the petition must be assumed to be true.   The substance of these facts is that the petitioner in December, 1913, was appointed to the office of mechanical foreman by the directors of the port of Boston, a public board, in accordance with the law and the regulations of the civil service commission.   On August, 5, 1914, he received a letter from one Doherty, superintendent of Commonwealth Pier No. 5, purporting to suspend him from office, and after a preliminary informal hearing that was had upon charges preferred against him by Doherty, the respondents decided, in response to the petitioner's written request, to hold a public hearing on these charges on August 25, 1914, in accordance with St. 1904, c. 314 and acts in amendment thereof.   On August 24 he called at the office of the board to request certain records and specifications necessary to his proper defence, and was told by the clerk of the board that there would be no necessity to prepare his defence, for the charges were to be withdrawn and no hearing had; nevertheless he left a written application for the data which he desired.   He appeared with counsel before the board at the time and place appointed for a hearing and found that the charges were not abandoned but that Doherty was present with a large number of witnesses, and the board ordered the hearing to proceed and denied his request for a continuance based on what had been told him the day before, in order to prepare his defence and to summon witnesses.   The petitioner and his counsel thereupon withdrew and the hearing proceeded in their absence, but the specifications and data asked for by the petitioner were not produced.   Repeatedly the directors had informed him that an extension would be granted if for any reason he was not ready for

the hearing. On August 28 he was informed by a member of the board that nothing had been brought out in the charges except "a slight incompatibility," but that the chairman thought it would be better for him to accept the position of mechanical assistant at $4 per day. Later this was confirmed by the chairman, who advised him to "accept the offer, and that he would be 'looked after.'" Following further conferences with the board in which the petitioner said that he was reluctant to accept such an offer because it would appear to be pleading guilty to the charges, in response to information from the chairman, he made an application for transfer to the position of engineer in charge of the heating plant provided he was paid $5 per day, and he began work on September 10, 1914, but learned at the end of the month that the daily wage was only $4. A committee of the labor union to which the petitioner belonged tried to secure an increase in his wages from the board, and thereupon the position of engineer in charge of the heating plant was abolished and the petitioner's pay was reduced to $3.75 per day and his rating to mechanical assistant. After the hearing on the charges brought by Doherty, the chairman of the board interviewed the civil service commission and learned that "a slight incompatibility" was not enough upon which to base the suspension or removal of the petitioner from his office.

It is plain that general allegations of fraud without stating definite acts which constitute a fraud are not enough to require judicial inquiry. *Nichols* v. *Rogers,* 139 Mass. 146. *Wallingford* v. *Mutual Society,* 5 App. Cas. 685, 697.

The question then is whether the facts alleged constitute ground for the issuance of the writ.

There is no averment of any illegality of procedure before the petitioner's transfer in accordance with his written application to the position of engineer in charge of the heating plant. There is no allegation that a copy of the charges preferred against him by Doherty was not given him, if indeed this was necessary. The inference is that he knew fully their nature before August 25. It is not alleged that he was in fact suspended from his office, nor that he was reduced in pay until after his application for transfer to the position of engineer in charge of the heating plant. However that may be, St. 1904, c. 314, § 2, as amended by St. 1905, c. 243,

authorized a temporary suspension for a period not exceeding thirty days without compliance with other provisions of the statute and pending further proceedings under the statute. These matters are not material provided his request for transfer was of such character or brought about under such circumstances that he is now bound by it.

His application for this transfer was voluntary and real. For some reason he was willing to give up his office as mechanical foreman at a salary of $1,800 per year and ask for a position as engineer in charge of the heating plant at wages of $5 per day. The petitioner did not insist upon the hearing upon the Doherty charges, which he plainly had a right to do before he could have been removed from his office. But he asked for a transfer to other work. Manifestly, if this application for a transfer was not induced by fraud, the petitioner cannot renounce it because of events wholly subsequent and having no connection therewith. If this application was induced by fraud, different considerations would apply. His averment in this respect is that his "action in applying for a transfer as engineer in charge of the heating plant was taken upon his understanding and belief that the charges preferred by Doherty would be dismissed, was caused by misrepresentation of the directors of the port of Boston, and because the petitioner was fearful on account of the manifest antagonism of the directors of the port of Boston towards him he would lose his employment entirely." Here are three moving causes set forth. The first is that he understood and believed that the Doherty charges would be dismissed, whereas they were not dismissed but were placed on file, as appears by an amendment to the petition. There is, however, nowhere in the petition any allegation of a representation by word or deed by any of the respondents bearing upon this subject. The statement that nothing of consequence had been developed at the hearing so far as had was not the equivalent of a statement that the charges would be dismissed. The beliefs and understandings of the petitioner not induced by the defendants are of no consequence.

The second moving cause is alleged in general terms as "misrepresentation" of the respondents. But there are nowhere in the petition specifications of untruths stated by any of the respondents before the application for transfer was made. It is

averred that the petitioner agreed to make the application for transfer provided he was paid $5 per day and that subsequently "the chairman . . . informed your petitioner, through his counsel, to make written application for transfer . . . and that your petitioner did so." But it earlier was alleged that the chairman had said that the pay was $4 and there is nowhere any averment that he receded from that position as to the pay or represented that it should be anything else than $4 per day. The allegation of the petition in this respect amounts at most to a misunderstanding. It falls short of misrepresentation.

It is to be observed that neither the first nor second cause alleged relates to the information given to the petitioner by the clerk of the board on the afternoon before the hearing. That allegation is that the clerk informed him that the charges were to be withdrawn and there would be no hearing. A withdrawal of such charges is a failure to prosecute by the person preferring the charges, in this instance, Doherty. A dismissal is a determination by the respondents acting as a tribunal. The information given by the clerk could not have had any influence upon the petitioner in this respect, for it was shown by the events of the day of the hearing not to have been accurate. Moreover, this statement by the clerk is not alleged to have been made by the direction of the respondents. Misinformation given out by a subordinate officer in the course of his duty, while doubtless in some aspects binding upon the board, is not as matter of law the equivalent of personal fraud on their part in the absence of an averment that it was a misstatement authorized by the respondents in bad faith and with a conscious purpose to mislead, or such indifference touching its truth as might amount to the same thing.

The third moving cause is because the petitioner was fearful by reason of the "manifest antagonism" of the respondents that he would lose his employment altogether. Doubtless this refers to the conduct of the hearing on the Doherty charges. It may be assumed that the petitioner was warranted in relying on the statement of the clerk of the directors made on August 24, that the charges would be withdrawn. But that was not a statement made by the respondents and is not alleged to have been made by their specific direction. The charges were not those of the

respondents, but of Doherty, and their province was to hear and determine what the truth was respecting them. The petitioner was not justified in leaving the hearing set for August 25 when present with counsel, because the board would not grant a continuance. It then must have become evident that he had been misinformed on the previous day and that the charges were not withdrawn. But even the fairness required of the respondents in conducting such a hearing did not on the allegations of the petition require an entire continuance. Doherty was there with a large number of witnesses, according to the allegation of the petition, and it well may have been inconvenient and not demanded by justice to have their attendance go for naught. A different question would be presented if a request for a continuance in order to prepare his defence had been denied after Doherty and his witnesses had been heard. There is no averment of other prejudice by the board in conducting the hearing. The further averment that two members of the board wanted the petitioner "to know that nothing had been brought out in the charges except 'a slight incompatibility'" and that no finding was made against him, goes to indicate that there then was no unfair treatment accorded to the petitioner. It falls far short of showing that there was "manifest antagonism of the directors of the port of Boston towards him." There are no other allegations in the petition respecting acts done at any time by the respondents which have a tendency to show any manifest antagonism on their part toward the petitioner which rightly could have induced him to ask for a transfer.

In view of these specifications of the facts and the reasons which moved the petitioner, the final general allegation that the suggestion that the petitioner apply for a transfer to the position of engineer in charge of the heating plant was "a device and subterfuge urged upon him" by the chairman of the board in order to accomplish his removal as mechanical foreman and that "all of the actions of the directors . . . were intended to trick and deceive him, and that he was duped and deceived throughout the entire transaction," are too vague and indefinite to constitute an averment of legal fraud. They are not the equivalent of a direct and positive statement that the conduct of the chairman in advising an application for transfer to the position of engineer in

charge was actuated by the fraudulent purpose to cause the petitioner voluntarily to vacate the position of mechanical foreman, well knowing that no cause existed for his removal, and at the same time to abolish the position to which he might be transferred, not in the public interests but fraudulently to cause harm to the petitioner and to oust him from the place to which he was entitled when no cause adequate in law existed therefor. If the petitioner meant to allege that in urging him to ask for the transfer to the lower position there was a fraudulent purpose on the part of the chairman, to the end that he might wrongfully be excluded from the public service, and that the petitioner's conduct in asking the transfer was induced by the representations made in furtherance of such fraudulent purpose, plain averments setting forth those facts and the fraudulent representations should have been made in the petition. No fraud practiced upon him by the respondents as the cause which moved him to ask for the transfer is set out in the bill.

It is urged in argument by the respondents that the position of mechanical foreman has been filled and that hence the petitioner cannot prevail, or in any event cannot get on without making such new incumbent a party. The facts touching this matter are not set out in the petition and therefore cannot be disposed of on demurrer. It is for the petitioner to consider, if he asks leave to amend his petition, whether the facts on this point should be set out.

It follows that the allegations of the petition fail to show that the petitioner is not bound by his request for a transfer from the position of mechanical foreman to that of engineer in charge of the heating plant, or that such transfer was made "without his consent," St. 1904, c. 314, § 1, given voluntarily and without being induced by the fraud of the respondents. Therefore the prayer of the bill that the petitioner be restored to the position of mechanical foreman ought not to be granted on the allegations of the petition.

The subsequent matters complained of as to removal from, and the abolition of, the position of engineer, as to reduction of pay, and as to the good faith of the respondents in that connection, might have been inquired into by proceedings under St. 1911, c. 624. *Gardner* v. *Lowell*, 221 Mass. 150. It is the general rule that where adequate relief may be had by resort to some other

remedy, the court will not issue a writ of mandamus. *Crocker v. Justices of the Superior Court,* 208 Mass. 162, 164. *Sears* v. *Nahant,* 208 Mass. 208, and cases cited at 209. There are no facts set out on this record which warrant a departure from this rule.

These considerations make it necessary that the demurrer be sustained. If the petitioner shall be advised that there is evidence available which will support a petition against the respondents according to the principles here stated, he may be allowed by a single justice to amend his petition within thirty days after the date of the rescript; otherwise, the petition may be dismissed.

*So ordered.*