IDA H. SAMPSON *vs.* HENRY J. SAMPSON & another.

Hampden.   September 28, 1915. — April 5, 1916.

Present: RUGG, C. J., LORING, BRALEY, DE COURCY, CROSBY, PIERCE, & CARROLL, JJ.

*Marriage and Divorce,* Petition to vacate decree. *Husband and Wife. Evidence,* Private conversations between husband and wife, Of motive. *Domicil. Jurisdiction. Venue. Illegitimacy. Words,* "Lives," "Lived."

A petition to vacate a decree of divorce that was entered *nisi* and afterwards became absolute, which alleges that the petitioner was induced by the fraudulent conduct and representations of her husband not to contest the libel, to which she had a complete defence, being fraudulently induced by him to believe that the proceedings had been discontinued, and that she did not know of the granting of the decree until after it had been made absolute, states sufficient ground for relief, and an allegation that the petitioner did not receive notice of the libel for divorce is not necessary.

In such a petition, an allegation that the petitioner fraudulently was induced to believe that the "libel proceedings had been discontinued and dropped" is a sufficiently specific averment of a fraudulent representation. It is not necessary to set out in detail all the misrepresentations relied upon, and, if the respondent wishes for further particulars, he can file a motion for specifications.

Where a woman, who married the petitioner's husband after he had obtained the divorce sought to be annulled, had at her own request been made a respondent to the petition, it was *held* not to be necessary for the petitioner to add to her petition any averments in regard to the new respondent, as she merely had asked that the decree of divorce should be vacated and the libel should be dismissed, and did not seek any relief against the new respondent.

Where a petition to vacate a decree of divorce that was entered *nisi* and afterwards became absolute alleges that in the libel for divorce, which was filed in the county

of Hampden, it was alleged falsely that the residence of the libellant was in Springfield and that the residence of the libellee was in another State and that the libellee had deserted the libellant, whereas the residence of both of them was at Westport in the county of Bristol, and the petition also alleges that the petitioner was induced by fraudulent misrepresentations of the respondent not to contest the libel and to believe that the proceedings had been discontinued, the petition is not made defective by the omission of an allegation that the Superior Court of Hampden County had no jurisdiction over the libel for divorce, because the other allegations set forth a fraud upon the court combined with a fraudulent depriving of the petitioner of the opportunity to present her lawful defence to the libel, which together constitute a ground for relief.

It cannot be said as matter of law that a delay of seven or eight months after the entering of an absolute decree for divorce before filing a petition to vacate such decree is in itself necessarily laches.

At a hearing upon the petition to vacate a decree of divorce above described, the petitioner testified without objection that on the last Sunday in July in a certain year her husband visited her, remaining two nights and a day, that they had some talk "about the divorce case in Springfield, and that as a result of the talk, less than a week later, she went to Providence and got the letter containing the citation" on the libel for divorce, and, subject to the respondent's exception, she then was permitted to testify that, "as a consequence of that private conversation on the last Sunday in July, she didn't do anything about the divorce hearing after she got the letter containing the notice in Providence." *Held,* that the evidence was admissible to show a motive for the petitioner's conduct, which was material, and that it need not be excluded as being an indirect statement of the substance of a private conversation between husband and wife.

In the case above described the fundamental issue was whether the petitioner voluntarily refrained from contesting the libel for divorce or whether she was prevented from contesting it by the fraudulent practices of the respondent. The judge made the following finding: "From her opposition to his divorce petitions in Washington, from her conduct toward her husband while the divorce proceedings in Springfield were pending and from her conduct as soon as she learned that a divorce had been granted, the court finds that the respondent . . . , in some form of words in private conversation with his wife, fraudulently represented to her that he had abandoned the libel for divorce begun in Springfield; that, as a result of his conduct toward her and his representations to her, the petitioner did not believe that the libel for divorce was going to be prosecuted by the respondent . . . and did not appear to oppose it; that she did not know that it was to be tried; nor did she know that a decree *nisi* or a decree absolute was entered until about the third week in October, 1913," which was more than five months after the decree became absolute and about two months before she filed her petition to vacate the decree. *Held,* that the inferences drawn by the judge, which led him to the conclusion that the petitioner fraudulently was prevented from contesting the libel for divorce by what occurred between the husband and wife while alone, did not constitute a violation of R. L. c. 175, § 20.

The provision of R. L. c. 175, § 20, that "Neither husband nor wife shall testify as to private conversations with each other," does not exclude from legal consideration an inference as to what was said in such a private conversation based on the testimony of a wife that she had a private conversa-

tion with her husband in consequence of which she did a certain thing and did not do a certain other thing.

If, in a case where the domicil or legal residence of a man is material, it appears that his domicil by birth was in a certain county in this Commonwealth, that he married there and lived there with his wife, and that later when he had been absent he made frequent visits to his wife who continued to live in the house that they had lived in together, a finding is justified that he retained his domicil in that place.

In the provision of R. L. c. 152, § 6, that "Libels for divorce shall be filed, heard and determined in the Superior Court held for the county in which one of the parties lives," the word "lives" plainly means "has his or her legal residence or domicil."

In a finding of a trial judge that the libellant in a suit for divorce "lived there [in Springfield] during a part of the summer and fall of 1912" and a further finding that the domicil of the libellant at that time was in Westport, the word "lived" is used in the sense of subsisted and does not relate to legal residence.

Where a libel for divorce falsely alleged that the residence of the libellant was in the county of this Commonwealth where the libel was filed and that the residence of the libellee was in another State, whereas the residence of both of them was in another county of this Commonwealth, a ruling, made by the trial judge at the hearing of a petition to vacate the decree of divorce obtained in the suit so brought, in substance that the court had only an apparent and not a real jurisdiction of the libel, is correct.

*Whether* the Superior Court ever can have jurisdiction to try and decide a suit for divorce in which the venue of the libel was laid wrongly because neither of the parties lived in the county where the libel was filed as required by R. L. c. 152, § 6, here was mentioned as a question which it was not necessary to decide in the present case.

Where the libellant in a suit for divorce practised a gross fraud upon the court by a wilful misrepresentation that he had his domicil in the county where the libel was filed and that his wife was domiciled in a city in another State, whereas they both had their domicils in another county in this Commonwealth, and by falsely representing to his wife that he had abandoned the libel and hence that there was no occasion for her to take action, and thereafter without his wife's knowledge obtained a decree for divorce on a charge of desertion which he knew to be false and groundless, and where no service was made upon the wife such as is required upon a resident of this Commonwealth and she did not appear voluntarily, it was *held* that the court, by reason of the gross fraud by which it was attempted to make the court an instrument of oppression and to deprive the libellee of the opportunity to present her just defence to the libel, acquired no jurisdiction of the case, and it was ordered that the decrees *nisi* and absolute be vacated and that the libel be dismissed.

At the hearing of the petition to vacate a decree of divorce above described, it appeared that the divorce was obtained by the principal respondent in order that he might marry the other respondent, which he did within six months from the time that the divorce became absolute, and that thereafter a child was born of this marriage. The judge found that the petitioner first learned of the divorce from the principal respondent about two weeks before he married the other respondent, and that the petitioner at once consulted a lawyer. The petitioner testified that she knew that an application had been made for the license for

the marriage of the respondents about a week before the ceremony took place. The petition to vacate the decree was filed about a month and three weeks after that marriage and between seven and eight months after the decree of divorce became absolute. *Held,* that a finding was warranted that the delay in filing the petition to vacate the decree did not indicate either laches or want of good faith.

In the same case it was found in substance that the woman respondent at the time the marriage ceremony was performed supposed that she had a legal right to marry the principal respondent, and it was contended that, she having entered into the marriage relation in good faith and having become thereby the mother of a child, the divorce decree on which she had relied ought not to be disturbed. *Held,* that the marriage status of the petitioner must be upheld regardless of its effect on the woman respondent, who must suffer for the wrongdoing of the man that she thought she was marrying, her only protection being that afforded by St. 1902, c. 310, under which her innocence and the legitimacy of her child may be established.

PETITION, filed in the Superior Court for the county of Hampden on December 27, 1913, and subsequently amended, to vacate a decree of divorce, which was entered *nisi* in that court on October 22, 1912, and which became absolute on May 5, 1913, and to dismiss the libel.

As stated in the opinion, Alice G. Sampson upon her own application was made a respondent to the petition. Both respondents demurred to the petition as amended. The causes of demurrer assigned by the respondent Henry J. Sampson were as follows:

"1. That the petitioner has not stated such a case as entitled her to any relief against these respondents or either of them.

"2. That the petitioner has not alleged that she did not have due and proper notice of the pendency of the libel for divorce.

"3. That the petitioner has not set forth specifically and with sufficient detail the false and fraudulent misrepresentations alleged to be made to her by this respondent, and which the petitioner says induced her not to appear in the suit and contest it, and to believe that the libel proceedings had been discontinued and dropped.

"4. That the petitioner has not set forth specifically and with sufficient detail the method, means and manner in which she alleges this respondent concealed from her the granting of the decree *nisi* until it had become absolute.

"5. That the petitioner does not allege any good reason for not bringing this petition sooner than she has done, and within a reasonable time after the decree *nisi* had become absolute.

"6. That the place of filing the libel is a matter of venue and not of jurisdiction.

"7. That the petitioner has not sworn to her amended petition."

The causes of demurrer assigned by the respondent Alice G. Sampson were the same with two additional causes assigned as follows:

"8. That the petitioner does not allege any reason why relief should be granted against this respondent, who has married the other respondent in good faith.

"9. That the petitioner has not alleged any good reason why the petitioner did not bring proceedings before this respondent and the other respondent were married."

The demurrers were argued before *Raymond*, J., who made orders overruling both demurrers, to which each of the respondents excepted. Later the case was heard by *Raymond*, J., upon the issues raised by the answers of the respondents. He found the facts that are stated in the opinion and concluded the memorandum of his findings of fact as follows:

"The court finds,

"First: That the respondent Henry J. Sampson had no legal residence in Springfield; that his domicil and legal residence during all of the time while the divorce proceeding was pending were at Westport, where he now lives.

"Second: That the petitioner never deserted the respondent Henry J. Sampson.

"Third: That the petitioner has always been faithful to her marriage vows.

"Fourth: That the petitioner never resided in Providence.

"Fifth: That the respondent Henry J. Sampson by his conduct toward the petitioner and by the representations which he made to her fraudulently prevented her from appearing at court and contesting his libel at Springfield.

"Sixth: That the court had only apparent jurisdiction of the libels in Hampden County, founded on the respondent Henry J. Sampson's false allegation of domicil.

"Seventh: That the respondent Henry J. Sampson obtained his divorce by false testimony.

"Eighth: That the petitioner did not unreasonably delay filing the petition to vacate the decree for divorce."

The judge ordered that the decree absolute and the decree *nisi* be vacated and annulled and that the libel be dismissed. The respondents alleged exceptions.

The first part of R. L. c. 175, § 20, is as follows:

"Section 20. Any person of sufficient understanding, although a party, may testify in any proceeding, civil or criminal, in court, or before a person who has authority to receive evidence, except as follows:

"First, Neither husband nor wife shall testify as to private conversations with each other."

The case was argued at the bar in September, 1915, before *Rugg,* C. J., *Loring, Crosby, Pierce, & Carroll,* JJ., and afterwards was submitted on briefs to all the justices.

*C. R. Cummings,* for the respondents.

*I. Brayton,* for the petitioner.

Rugg, C. J. This is a petition by Ida H. Sampson to set aside a decree *nisi* and a decree absolute entered in a libel for divorce brought against her by her husband, Henry J. Sampson. Thereafter, Alice G. Sampson was allowed to intervene as a party respondent. Their several demurrers present the first point to be decided. The petitioner avers in substance that she was lawfully married to Henry J. Sampson in 1903, and that thereafter until April, 1913, they cohabited together as husband and wife in Westport in the county of Bristol in this Commonwealth; that in July, 1912, her husband entered in the Superior Court for the county of Hampden a libel for divorce, wherein it was alleged that his residence was in Springfield in this Commonwealth, and that her residence was in Providence in the State of Rhode Island; that she had deserted him in January, 1908; and that in October, 1912, a decree *nisi* was granted, which was made absolute in May, 1913; that all these allegations in the libel were false, as the libellant well knew, and that in truth the residence of both herself and her husband was in Westport, where at those times they were living in cohabitation as husband and wife; and that by fraudulent misrepresentations she was induced not to contest said libel and to believe that the proceeding had been discontinued, and that she did not know of the granting of the decree until after it had been made absolute.

1. An allegation that the petitioner did not receive notice of

the libel was not necessary. The averment of fraudulent inducement by the husband not to contest the libel was enough. An inducement by fraud to abstain from defending oneself may be as harmful in its consequences as to accomplish the same end by fraudulent prevention or by violence. The essence of the ground for relief is a result accomplished by fraud.

2. The fraudulent representation, although not set out in the petition with technical precision, is in substance that the "libel proceedings had been discontinued and dropped." This is an allegation of specific fraudulent representations and is something more than a general unsupported averment of fraud, which standing alone would not be enough. *Nichols* v. *Rogers,* 139 Mass. 146. *Butler* v. *Directors of the Port of Boston,* 222 Mass. 5. It was not necessary to set out in detail all those misrepresentations. The continued cohabitation during the pendency of the libel may be treated as an act of misrepresentation to that end. If further particulars were deemed necessary for their defence by the respondents, a motion for specifications was their appropriate form of relief. *Ford* v. *Ford,* 104 Mass. 198.

3. It was proper at her own request to admit as a party to defend Alice G. Sampson, who had joined in a marriage ceremony with Henry J. Sampson subsequent to the entry of the decree absolute in the libel for divorce and thereafter had cohabited with him as his wife. The present petitioner seeks no relief against her in this proceeding. Therefore, it was not necessary to insert any averments respecting her in the amended petition after she was admitted as a respondent.

4. Failure to allege in the petition that the Superior Court of Hampden County had no jurisdiction over the libel for divorce was not so essential as to be ground for demurrer. So far as that was relied on, it was an inference of law from the facts pleaded. Indeed, that as a bald proposition is not the single ground for relief. Facts sufficient to show a fraud upon the court are set out in the petition, and that, coupled with the invasion of the petitioner's rights by fraud, is the foundation of the petition.

5. Although advantage may be taken of the defence of laches by demurrer when it appears on the face of the pleadings, *Sawyer* v. *Cook,* 188 Mass. 163, 168, a delay of between seven and eight months after the granting of the decree absolute cannot be pro-

nounced unwarranted as matter of law. *Rolikatis* v. *Lovett,* 213 Mass. 545, 548. *Albiani* v. *Evening Traveler Co.* 220 Mass. 20, 26. *Holbrook* v. *Brown,* 214 Mass. 542.

6. At the hearing on the issues raised by the answers, the petitioner testified without objection that on the last Sunday in July, 1912, her husband visited her, remaining two nights and a day, and that they had some talk "about the divorce case in Springfield, and that as a result of the talk, less than a week later, she went to Providence and got the letter containing the citation" on the divorce libel. She was permitted to testify subject to exception that "as a consequence of that private conversation on the last Sunday in July, she didn't do anything about the divorce hearing after she got the letter containing the notice in Providence."

It is a principle of the common law which is embodied in R. L. c. 175, § 20, cl. 1, that "Neither husband nor wife shall testify as to private conversations with each other." That principle always has been declared and enforced by this court. *Dexter* v. *Booth,* 2 Allen, 559. *Commonwealth* v. *Cleary,* 152 Mass. 491. *Fuller* v. *Fuller,* 177 Mass. 184. *Baldwin* v. *Parker,* 99 Mass. 79, 83. *Leland* v. *Converse,* 181 Mass. 487. See Wigmore on Evidence, §§ 2334–2340. But it never has been extended so far as to prevent the introduction of evidence to prove that there had been a private conversation. That fact, when competent, may be shown although the conversation itself may not be admissible by the testimony of either husband or wife. Proof of that fact is quite disconnected from any direct or indirect statement of the substance of the conversations.

The petitioner, after receiving by registered mail at Providence notice that her husband had brought a libel for divorce in Hampden County, returnable in August, took no steps respecting it for more than a year. The motives which led her to this course of conduct were important as bearing upon the question whether she was barred by laches from maintaining the present petition. The operations of her mind and the reasons for her conduct were material. She was a competent witness upon this point. *Knight* v. *Peacock,* 116 Mass. 362. *Toole* v. *Crafts,* 193 Mass. 110. *Carriere* v. *Merrick Lumber Co.* 203 Mass. 322, 327. That one of the factors going to make up her motive for conduct was the fact of a

private conversation was not an indirect method of proving the substance of that conversation. There is a plain line of demarcation between the occurrence of the fact of a private conversation between husband and wife, which may be competent, and a narration of the substance of that conversation by either of them, which is not competent. That line, in the opinion of a majority of the court, was not overstepped in the case at bar.

7. Exception was taken to this finding of the trial judge: "From her opposition to his divorce petitions in Washington, from her conduct toward her husband while the divorce proceedings in Springfield were pending, and from her conduct as soon as she learned that a divorce had been granted, the court finds that the respondent, Henry J. Sampson, in some form of words in private conversation with his wife, fraudulently represented to her that he had abandoned the libel for divorce begun in Springfield; that, as a result of his conduct toward her and of his representations to her, the petitioner did not believe that the libel for divorce was going to be prosecuted by the respondent, Henry J. Sampson, and did not appear to oppose it; that she did not know that it was to be tried; nor did she know that a decree *nisi* or a decree absolute was entered until about the third week in October, 1913."

It plausibly is urged in support of this exception that in effect this is a finding by inference as to what were the private conversations between husband and wife, and that, as direct evidence as to such conversations is incompetent, *Leland* v. *Converse*, 181 Mass. 487, the judge had no right under the law to find by inference what they were and base a conclusion thereon.

That statute simply provides that neither the husband nor the wife shall testify as to their private conversations. It does not exclude from the realm of evidence proof of acts designedly induced by those conversations and legitimate inferences as to the cause of such acts.

The fundamental issue was whether the petitioner voluntarily refrained from contesting the libel, or whether she was prevented by the fraudulent practices of the respondent from contesting the libel. That was the issue which the judge had to decide. The substance of his finding is that the respondent fraudulently prevented the petitioner from contesting the libel for divorce. The rest of the finding is subsidiary and ancillary to that main fact.

Numerous incidents point to the exercise of some coercive power to overcome the free desire of the wife. There was evidence admitted without objection that the pending proceeding for divorce was the subject of conversation between the husband and wife. The judge might have found that the respondent sought the petitioner with the express design of urging deceitful representations. The statute does not prevent a court from exercising its sound judgment as to the influences which may have been exerted under the shelter afforded by such privacy, and from inferring that thus fraud had been practiced which prevented the petitioner from contesting the libel, and that thereby the result was produced now sought to be set aside. To draw the inference, which seems almost irresistible from all the circumstances, that the petitioner was fraudulently prevented by what occurred between the husband and wife while alone, is no violation of the statute in the opinion of a majority of the court.

8. It has been found as a fact that Henry J. Sampson had no legal residence in Springfield, was there during a part of the summer and autumn of 1912 "for the sole purpose of obtaining a divorce from his wife, well knowing that he had no legal ground for a divorce," and that "his domicil and legal residence during all of the time while the divorce proceeding was pending was at Westport, where he now lives." Confessedly the domicil and residence of the petitioner during the entire crucial period were at Westport. As to these matters, the libel falsely alleged the residence of Henry J. Sampson to be in Springfield in the county of Hampden, and that of Ida H. Sampson to be in Providence in the State of Rhode Island. The judge further found that the court had only apparent jurisdiction of the libel in Hampden County "founded on the respondent Henry J. Sampson's false allegation of domicil." So far as these are findings of fact they are abundantly warranted by the evidence. His findings of fact are not open to review. The only question is whether as matter of law there was any evidence to support them, and whether these findings were pertinent to the decision of the case. *Bailey* v. *Marden*, 193 Mass. 277. *Wade* v. *Smith*, 213 Mass. 34.

9. The domicil of the husband might have been found to have been in Westport. That was his domicil of origin. It will not be treated as lightly lost in the absence of some clear purpose

coupled with the necessary physical facts sufficient to constitute a change. His constant visits to his wife who remained in the home jointly established and occupied by them for most of the married life, coupled with his otherwise itinerant mode of life, was ample evidence to justify the finding.

10. Plainly the word "lives" in R. L. c. 152, § 6, which provides that "Libels for divorce shall be filed, heard and determined in the Superior Court held for the county in which one of the parties lives," connotes a legal residence or domicil. *Hanson* v. *Hanson,* 111 Mass. 158. *Winans* v. *Winans,* 205 Mass. 388. *Labonte* v. *Labonte,* 210 Mass. 319.

11. There is no inconsistency in the finding that Henry J. Sampson "lived there [in Springfield] during a part of the summer and fall of 1912," and the further finding that his domicil was in Westport. Manifestly "lived" in the finding just quoted was used in the sense of subsisted and not as synonymous with legal residence, as contended by the respondents.

12. The ruling of law to the effect in substance that the court had only an apparent and not a real jurisdiction of the libel was right. There is ground for the argument that the Superior Court, even though a court of general jurisdiction, did not have jurisdiction, using that word in its accurate sense, of the libel for divorce. This argument may be grounded upon the words of R. L. c. 152, § 8, which are the same in Rev. Sts. c. 76, § 15; Gen. Sts. c. 107, § 19; Pub. Sts. c. 146, § 9, requiring the "libellee to be summoned to appear and answer at the court having jurisdiction of the cause," a single court of general jurisdiction having jurisdiction of the general subject of divorce all the while, *Banister* v. *Banister,* 150 Mass. 280, as well as upon the words of R. L. c. 152, § 6, to the effect that "Libels for divorce shall be filed, heard and determined in the Superior Court held for the county in which one of the parties lives." *Moore* v. *Moore,* 2 Mass. 117. *Richardson* v. *Richardson,* 2 Mass. 153. But it is not necessary to decide that point now, nor to determine that in no instance can the Superior Court of a county, in which a venue of the libel has been laid wrongly, have jurisdiction to decide the issues raised.

In the case at bar the gross fraud practised by Henry J. Sampson upon the court in view of all the facts was such that the Superior Court for Hampden County acquired no jurisdiction of the cause

or of the present petitioner. That fraud consisted in a wilful misrepresentation that he had a domicil in Hampden County, that his wife was domiciled in Providence in the State of Rhode Island, in an abuse of her confidence in misleading her by base methods into the mistaken belief that, after he had caused a publication of the notice of the pendency of the divorce proceedings to be called to her attention, he had abandoned the libel and hence there was no occasion for her to take action, and the contemporaneous prosecution to a final decree in his favor by perjured evidence of a libel for divorce bearing on its face an averment of one of the statutory causes which, as he well knew, was false and groundless, no service having been made upon the libellee such as the law requires as the prerequisite for jurisdiction over her person (in the absence of voluntary appearance) in all cases where she is a resident within the Commonwealth. The perjured evidence alone would not be enough to set aside a decree entered by a court which had jurisdiction of the cause and which had acquired jurisdiction of the parties. But this record on the facts found discloses a case where by craft and deceit extrinsic and foreign to the issues raised on the face of the libel the court was induced to assume a jurisdiction which it could not have exercised if the truth had been known, and where the adversary party was prevented by a flagitious betrayal of conjugal confidence from making appearance in court or in any way contesting the procedure, even though it was called to her attention by him by an irregular service. This presents a case of legal fraud quite outside and beyond the intentional introduction of false testimony. It discloses substantial grounds for relief not only to prevent a wrong to the present petitioner but to frustrate an attempt to make the court an instrument of oppression in aid of a surreptitious sham founded on wrongful artifice. In such case relief will be afforded. *Edson* v. *Edson,* 108 Mass. 590. *Tucker* v. *Fisk,* 154 Mass. 574, 578. *Wiley* v. *Wiley,* 161 Mass. 446. *Keyes* v. *Brackett,* 187 Mass. 306. *Zeitlin* v. *Zeitlin,* 202 Mass. 205, 207.

13. The husband's conduct in maintaining marital relations with the petitioner on his monthly visits over Sunday during the pendency of the libel, the last occasion being almost six months after the decree of divorce had been made absolute, was a fact rightly given weight in determining whether he had represented

to his wife that the libel had been abandoned. These visits apparently were received with the confidence appropriate to the wifely relation. When they are considered in connection with the baffling by the wife of two earlier attempts on the husband's part to obtain a divorce in the State of Washington, they might have been regarded as showing that she had confidence in the rectitude of his intentions. There is nothing to indicate that she ever had renounced her opposition to his obtaining a divorce. If she was believed by the judge from her appearance and testimony to be a virtuous woman, it is almost inconceivable that she would have continued to receive him as husband if she had any suspicion that he still was attempting to sever the marriage tie. The inference from his conduct was warranted that the wife took no steps to contest the divorce because he so abused her confidence and played upon her credulity in his sincerity as to make her certain that the divorce proceeding had been abandoned. His conduct alone, apart from any verbal statement, might have been treated as a representation to that effect.

14. The respondents contend that the petitioner is shown on the evidence to have failed to exercise diligence and good faith in instituting this proceeding. The judge found that she first learned of the divorce about the third week in October, 1913, from Henry J. Sampson, after he had cohabited with her two nights, and that she at once consulted a lawyer who did not act for her, and within a day or two after November 5, 1913, she consulted her present attorney and this petition was filed on December 27, 1913. In the meantime, on November 5, 1913, a marriage ceremony had been performed between Henry J. Sampson and Alice G. Wordell. The marital relation has existed between them since and a child has been born. The petitioner testified that she knew that application had been made for the license for this marriage about a week before the ceremony took place. It should be added in this connection that the judge found that the purpose of Henry J. Sampson in attempting to obtain a divorce from the petitioner in the State of Washington and later in Springfield was that he might marry Alice G. Wordell, who lived near the petitioner in the same town; that the two respondents had maintained friendly relations during 1910, 1911 and 1912, had corresponded with each other, and that he frequently saw her when he returned to Westport.

In May, 1911, the petitioner had a talk with the respondent Alice and charged her with breaking up the petitioner's home, and that respondent said she was sorry and promised not to have anything more to do with Henry J. Sampson.

These circumstances fail to show laches or lack of good faith. It is apparent from the record that the judge in substance gave credence to the testimony of the petitioner and utterly distrusted that of the respondent. He found in effect that she had been the victim of a high degree of perfidy on the part of her husband as to matters most precious to a wife. She appears to have acted at once upon hearing that the marriage license had been applied for, and at all events before the ceremony was performed between the respondents. The time for opposing the granting of a divorce had gone by so far as concerned the court records, for in that regard she was told truly that the decree had been made absolute. The facts were extraordinary. The delay in filing the petition to vacate the decree cannot be pronounced as indicative either of laches or want of good faith.

15. It was found in substance that Alice G. Wordell honestly supposed that she had a legal right to marry Henry J. Sampson at the time when the marriage ceremony was performed, although it does not appear that she made an investigation to ascertain what the grounds of the libel were. It is urged that, because she has entered into that marriage relation in good faith and thereby has become the mother of a child, no relief ought to be granted which will have the effect of annulling that marriage. Reference is made to the analogies of title acquired by an innocent purchaser for value and by the buyer of goods sold in market overt. These suggestions are without weight under the circumstances here disclosed. The marriage between the petitioner and her husband was valid. It established a status recognized as of the highest importance to the moral and social welfare of the State. It cannot be dissolved during their joint life except for the limited causes and in the narrow manner allowed by the statute. A legal wife at least is as much entitled to have her status preserved as is an unfortunate and possibly duped woman, who mistakenly thought herself to be the second wife, to have her status justified and established. *Turner* v. *Williams*, 202 Mass. 500. The supposed second wife hardly can ask to be protected by such a trick

upon the courts as that by which Henry J. Sampson obtained the appearance of a legal divorce.  The position of the second wife is unfortunate.  But she is in no worse condition than any woman who marries a man already married.  The guilt of the husband is the sole cause of her misfortune, to which no act of the petitioner contributed.  The court cannot suffer itself to be used fraudulently by a man, reckless of his initial marriage obligations, as an instrumentality for wronging his first wife, merely to protect his second wife.  *Holmes* v. *Holmes,* 63 Maine, 420.  Moreover, some measure of protection is afforded by St. 1902, c. 310, whereby her innocence and the legitimacy of her child may be established.

All the exceptions which have been argued have been disposed of by what has been said.  The others are treated as waived.  But an examination of them discloses no reversible error.

*Decree affirmed.*