## Mary E. Corkum *vs.* Anna P. Clark.

Worcester.    January 4, 1928. — May 23, 1928.

Present: Rugg, C.J., Pierce, Carroll, Wait, & Sanderson, JJ.

*Equity Pleading and Practice*, Answer, Equity Rule 6 (1926). *Rules of Court. Marriage and Divorce*, Foreign divorce. *Jurisdiction. Pension. Equity Jurisdiction*, Federal pension, To establish marriage status. *Constitutional Law*, Full faith and credit. *Conflict of Laws.*

It *was stated*, that an answer in a suit in equity, stating as to each of several separate paragraphs of the bill, merely that the defendant neither admitted nor denied their allegations but required the plaintiff to prove the same, is not in conformity with Equity Rule 6 (1926).

A wife, whose matrimonial domicil always has been in this Commonwealth, who always has lived here and at all times has been a nonresident of the State of Washington, may attack collaterally, in judicial proceedings in this Commonwealth, a judgment of a court of the State of Washington purporting to divorce her and her husband, where it appears that the judgment was issued in proceedings in which no personal service was made upon her in that State and she did not appear.

The courts of this Commonwealth are not required by art. 4, § 1, of the Federal Constitution to give any faith or credit to a judgment of a court of the State of Washington rendered in divorce proceedings against a woman who was a nonresident of that State and never had a matrimonial domicil there, who had not appeared in the proceedings, and upon whom no service of process had been made in that State, where it appeared that, by a false affidavit and a fraud perpetrated upon the court, the husband falsely had represented that he had complied with a statute of that State as to service upon the wife by mailing to an alleged last known address.

In a suit in equity by one alleging herself to be the widow of a man against another woman, who also asserted herself to be his widow, it appeared that the plaintiff always had had a matrimonial domicil in this Commonwealth and had been deserted here by her husband, who had brought divorce proceedings in the State of Washington, in which, by a false affidavit and a fraud upon the court, he had represented that he had complied with a statute of that State as to service upon the wife by mailing, and through that fraud had procured a divorce. Thereafter, in the State of Washington, he went through the form of marriage with the defendant, had children by her, and died. His standing as a veteran of the Spanish and the World Wars entitled his widow to pensions. The alleged second wife claimed the pensions, and Federal authorities had awarded them to her, had made some payments in accordance with the award and had suspended further payments pending a decision by the courts of this Commonwealth as to who was widow of the veteran. The prayers of the bill were that the divorce and alleged second marriage in

the State of Washington be declared void, for an injunction restraining the defendant from representing herself as widow and from claiming as widow any money or property as aid, pension or compensation, for an accounting as to money already received, and for general relief. *Held*, that

(1) The judgment of the court of the State of Washington was open to attack collaterally in this suit;

(2) Such declaration as the courts of this Commonwealth may make as to the validity of the judgment of the Washington court cannot affect the status of the parties in that State;

(3) In the circumstances, the judgment of the court of the State of Washington cannot be recognized by the courts of this Commonwealth, but must be treated as void here;

(4) The first prayer of the bill must be denied;

(5) The provisions of the acts of Congress with respect to the pensions and adjusted compensations in question preclude the courts of this Commonwealth from attempting either directly or indirectly through injunction upon the defendant to impose their view as to the plaintiff's status as widow upon the Federal authorities therein described, who are given exclusive jurisdiction for the administration of those laws; and also preclude the relief by accounting sought by the plaintiff, the defendant herself not having been guilty of any fraud;

(6) Whether the plaintiff was the widow and entitled to represent herself as such, or whether that status belonged to the defendant, was a question having important aspects of a pecuniary nature, the decision of which related to a civil right which was the basis of a pecuniary claim and which had an immediate evidentiary value in the pressing of that claim; and the court of equity in the circumstances had jurisdiction to determine that question;

(7) It was ordered that a decree be entered with appropriate recitals as to the domicil of the plaintiff, the matrimonial domicil of the plaintiff and the husband, and the domicil of the husband at the time of his death, declaring that the plaintiff was the widow of the veteran according to the law of this Commonwealth.

BILL IN EQUITY, begun by writ of summons and attachment in the Superior Court dated April 7, 1926, and described in the opinion.

There were eleven paragraphs in the bill. The defendant admitted the allegations of the second paragraph. As to each of the other paragraphs, she alleged that she "neither admits nor denies the allegation contained" therein "but requires" the plaintiff "to prove the same."

The suit was heard by *Lummus*, J. Material facts found by the judge are stated in the opinion. By his order a final decree was entered dismissing the bill. The plaintiff appealed.

The case was submitted on briefs.

*C. T. Flynn,* for the plaintiff.

*J. F. McGrath,* for the defendant.

RUGG, C.J. The plaintiff in this suit in equity seeks to have both the divorce decree from her obtained by her late husband, Aubrey D. Corkum, in the State of Washington, and his subsequent marriage to the defendant declared null and void and to have herself declared the widow of said Aubrey. There is a prayer for an injunction to restrain the defendant from representing herself to be the widow of Corkum and from claiming, as his widow, any money or property as aid, pension, or compensation. There is also a prayer for an accounting and for general relief.

By her answer the defendant admitted the allegations of one paragraph of the plaintiff's bill and as to the ten other paragraphs neither admitted nor denied the allegations, but required the plaintiff to prove the same. This was not a proper answer. The defendant in a suit in equity is required to answer fully, directly and specifically each allegation in the bill and to avoid any general denial of its averments. The essentials of a proper answer are specified in Equity Rule 6 (1926). They have been explained fully in recent decisions. *Burke* v. *McLaughlin,* 246 Mass. 533, 537, 538. *Volpe* v. *Sensatini,* 249 Mass. 132. *Piper* v. *C. L. Hayden Co.* 254 Mass. 317, 319. The case, however, has been argued without regard to this defect and is therefore considered as if there had been a proper joinder of issues.

Findings of fact were made by the trial judge. Thus it appears that on January 24, 1916, Aubrey D. Corkum, a widower, having seven children, married the plaintiff, both being domiciled at Fitchburg in this Commonwealth. They lived together as husband and wife in that place until he went to war in April, 1917. He went to France and returned from the war in 1918, lived for several days with the plaintiff on two occasions in the fall of 1918, and was then transferred to Camp Dodge, near Des Moines, Iowa, remaining there until September, 1920, except for a short visit to his wife in Fitchburg in September, 1919. Two children had been born of this marriage and these with a majority of the

seven children of Corkum by his first wife continued to live with the plaintiff in Fitchburg. In the fall of 1919 Corkum commenced divorce proceedings against the plaintiff in the District Court for Polk County, Iowa, which in August, 1920, were dismissed after notice and hearing. In September, 1920, Corkum was ordered to Camp Lewis, Tacoma, Washington, by his military superiors. Before September 14, 1920, he became domiciled in Tacoma. He had no justifiable cause for living apart from the plaintiff and she has been guilty of no matrimonial fault. He intentionally deserted her without cause in or before September, 1920.

The statutes of Washington then in force required that the complainant should have been a resident in that State for at least one year prior to bringing a proceeding for divorce. On September 14, 1921, Corkum filed a complaint against the plaintiff in the Superior Court in Pierce County, Washington, falsely alleging cruelty and other matrimonial misconduct on the part of the plaintiff, and praying for a divorce. It has been found that, by the law of Washington then in force, when a defendant in a divorce case could not be found within the State, the plaintiff or his attorney was required, as a prerequisite to service by publication in a newspaper, to make an affidavit that he believed that the defendant was not a resident of the State and that he had deposited a copy of the summons and complaint in the post office, directed to the defendant at his place of residence, unless it was stated in the affidavit that such residence was not known to the affiant. Said Corkum filed such affidavit sworn to by him, in which he declared that the present plaintiff "is not a resident of the State of Washington," but that her "last known place of residence" was "at Des Moines, Iowa"; and his attorney made an affidavit that he had deposited a copy of the summons and complaint in the post office, directed to the present plaintiff at Des Moines, Iowa. In fact, her domicil and residence was, and from the time of her marriage had always been, at Fitchburg in this Commonwealth. Corkum knew this when he made the affidavit and he made it in bad faith and with intent that the present plaintiff should receive no notice and be unable therefore to

contest the suit. As a consequence the present plaintiff did not appear to defend and was defaulted on motion on November 17, 1921. An interlocutory decree was entered in favor of Corkum on November 19, 1921, and on May 22, 1922, the final decree of divorce was entered, Corkum marrying the defendant on the same day. Corkum and the defendant continued to live as husband and wife in the State of Washington until July, 1924, when they removed their residence and domicil to Worcester in this Commonwealth. He died in this Commonwealth in August, 1924. The present plaintiff has not been guilty of laches or any acts constituting an estoppel, and is in no way barred by her own conduct from contesting the validity of the Washington divorce.

These facts as found by the trial judge must be accepted as true, because no evidence is reported. *Chapman* v. *Chapman,* 224 Mass. 427, 432. *Commissioner of Banks in re Cosmopolitan Trust Co.* 249 Mass. 144, 147. *Sullivan* v. *Roche,* 257 Mass. 166, and cases cited at page 169.

1. The primary question is, What effect ought to be given to the decree of divorce entered in the court of the State of Washington. That decree was entered by a court of superior and general jurisdiction under the statutes and decisions of the State of Washington. Remington's Comp. Sts. of Washington (1922), Title I, c. 2, § 15. *State* v. *Superior Court,* 14 Wash. 203, 206. Commonly there is a presumption in favor of regularity of the proceedings of any court of general jurisdiction. *Robinson* v. *Freeman,* 236 Mass. 446. *Applegate* v. *Lexington & Carter County Mining Co.* 117 U. S. 255, 269. That presumption, however, does not extend to a case where it appears from the record that the defendant was a nonresident and did not voluntarily appear in court, and it does not appear that service of process was made upon him within the State. *Rand* v. *Hanson,* 154 Mass. 87, 89. *Tucker* v. *Columbian National Life Ins. Co.* 232 Mass. 224, 228. The record of the Washington court shows that the defendant in that suit, the plaintiff in the present suit, was at all times a nonresident of the State of Washington, that no personal service was made upon her in that State, and that she did not appear in the court of that State. It further

appears from the facts as found that the matrimonial domicil of the plaintiff and Corkum was at all times within this Commonwealth and not elsewhere, and was never in the State of Washington. The present plaintiff remained in this jurisdiction. In these circumstances it is settled that the plaintiff is not bound by the decree entered by the Washington court but may attack it collaterally and show that it has no effect on her. The courts of this Commonwealth are not bound to give that judgment full faith and credit under the Constitution of the United States. *Haddock* v. *Haddock,* 201 U. S. 562. *Andrews* v. *Andrews,* 176 Mass. 92, 93; affirmed in 188 U. S. 14, 39. *German Savings & Loan Society* v. *Dormitzer,* 192 U. S. 125, 128. *Perkins* v. *Perkins,* 225 Mass. 82. The plaintiff may show the invalidity of the Washington decree as to any right in issue on the present record.

2. Where there has been no personal service upon, or voluntary appearance by, the nonresident spouse, it is essential to the validity for any purpose of a divorce granted upon *ex parte* proceedings by the court of the State of the domicil of the complaining spouse, when not the State of matrimonial domicil, that the notice or other substituted service of the court process upon the nonresident spouse must be by such publication or other substituted notice as is required by the laws of the State of the court granting the divorce. Failure to comply with such law as to service upon the nonresident spouse affects the jurisdiction of the court and renders wholly void a decree of divorce entered in a cause dependent upon such substituted service.

It is not open to doubt that, upon the facts found in the case at bar and already narrated, a fraud was perpetrated by Corkum upon the court of Washington in that the allegations of his complaint for divorce contained wilfully false statements as to the place of residence of the present plaintiff. Consequently the notice to the defendant in that suit, the present plaintiff, was not in conformity to the laws of the State of Washington. The notice was not sent to her at the place well known by Corkum to be her place of residence and her domicil. The result is that under authoritative

decisions the decree in that suit was void as to the present plaintiff and the courts of this State are not required to give to it any faith or credit. *Cheely* v. *Clayton,* 110 U. S. 701. *Thompson* v. *Thompson,* 226 U. S. 551, 562. *Grannis* v. *Ordean,* 234 U. S. 385, 393. This controlling principle is recognized by the courts of Washington. *Burns* v. *Stolze,* 111 Wash. 392, 395–396. *Schmelling* v. *Hoffman,* 111 Wash. 408, 413, 414. *McKeand* v. *Bird,* 116 Wash. 208.

3. The plaintiff urges that she has a right to a decree by the courts of this Commonwealth, that the decree of the Washington court is void. It is true that on the facts found Corkum deserted his wife in the State of their matrimonial domicil, which continuously has remained her personal domicil notwithstanding his change of residence, and obtained, in the absence of the plaintiff and her nonappearance, a decree of the court of the State of Washington, having the superficial appearance of a divorce, by means of intentional failure to comply with the laws of that State as to service of notice of that suit. A decree of that nature obtained under such circumstances in this Commonwealth would not be regarded as valid by our courts. *Sampson* v. *Sampson,* 223 Mass. 451. As already pointed out, it would be regarded as void generally when the question of its validity can properly be presented for adjudication in the courts.

It does not follow, however, that the State of Washington was without jurisdiction to enter a decree which may be valid within its own territory. *Haddock* v. *Haddock,* 201 U. S. 562, 578, 579. It may be that, by reason of intervening circumstances or local practice and procedure of that State, it is not now possible to obtain in Washington a decree setting aside the decree obtained by Corkum. Apparently in the courts of Washington that decree cannot be attacked collaterally, *Foster* v. *Foster,* 130 Wash. 376, 378, and cannot be assailed directly because of the decease of Corkum. *Dwyer* v. *Nolan,* 40 Wash. 459. That law and practice of the State of Washington have no extraterritorial effect and are not binding upon the courts of this Commonwealth in the circumstances here disclosed.

Of course we have no jurisdiction over a decree entered by

the court of another State. Our jurisdiction goes no further in the case at bar than to declare whether the decree of the court of Washington possesses any validity which will be recognized in this Commonwealth. When that decree is of no force because of want of jurisdiction of the court of Washington, we have ample power to determine what weight shall be attributed to it in our courts regardless of its force and effect in the State of Washington. In that field our jurisdiction is complete under the authoritative decision of *Haddock* v. *Haddock, supra. Perkins* v. *Perkins,* 225 Mass. 82. In the exercise of that jurisdiction we are not bound by rules of practice or procedure prevalent in Washington. The facts are ascertained and given their appropriate legal effect in accordance with the law of this forum.

The plaintiff has cited numerous cases to support her contention that in a suit in equity a decree of divorce, obtained as was the one here under consideration, may be declared null by the courts of another State. *Johnson* v. *Coleman,* 23 Wis. 452. *Bomsta* v. *Johnson,* 38 Minn. 230. *Brown* v. *Grove,* 116 Ind. 84. *Sammons* v. *Pike,* 108 Minn. 291. *Lawrence* v. *Nelson,* 113 Iowa, 277. *Kempson* v. *Kempson,* 18 Dick. 783. An examination of these cases shows that, while some of the judicial opinions contain rather broad language, the actual decisions go no further than to enjoin the enforcement of such decrees or to refuse to give them full faith and credit. None of them make unqualified adjudication of invalidity, such as might be made by a court of the State granting the decree in appropriate proceedings designed to set it aside. We cannot undertake to give wider scope to our determination than is required for the decision of the issues raised touching the rights of the parties in the case at bar. We cannot therefore make any general declaration as to the validity of the decree of the Washington court. We do not adjudicate what may be the status of the parties to this suit touching their relations to Corkum in the State of Washington. We can only decide what that status is in this Commonwealth.

The first prayer of the plaintiff's bill must be denied.

4. The facts already stated show that by decisions of this court rendered under the sheltering authority of *Haddock* v. *Haddock*, 201 U. S. 562, the Washington divorce will not be recognized by the courts of this Commonwealth but will be treated as void. The plaintiff was deserted by her husband without cause. She has been innocent of any marital wrong. Her domicil did not follow that of her husband when he deserted her. His desertion of her was a wrong against her marital rights and enabled her to retain as her own the matrimonial domicil regardless of the fiction that usually the domicil of the wife follows that of the husband. The marriage status was not subject to the judicial power of the State of Washington. The courts of this Commonwealth will not recognize a decree of divorce entered in the courts of another State without actual notice to or knowledge by the wife, innocent of marital misconduct, at the instance of a faithless husband who has removed from the matrimonial domicil in this Commonwealth where the wife has continued to maintain her home. *Perkins* v. *Perkins*, 225 Mass. 82, and cases there reviewed. *Dorey* v. *Dorey*, 248 Mass. 359, 361.

5. The third and fourth prayers of the bill and the main grounds stated in the charging part of the bill seek relief against the defendant touching various sums of money received by her on her representation that she is the widow of Corkum, under divers pension laws of the United States. Concerning this matter the findings of fact are of this tenor: "defendant, claiming to be the widow of said Aubrey D. Corkum, has claimed and received through the United States Veterans Bureau adjusted compensation under the Act of Congress known as the 'World War Adjusted Compensation Act' of May 19, 1924, c. 157, 43 U. S. Sts. at Large, 121, U. S. Comp. Statutes § 9127, the right to which compensation under §§ 601 and 602 of said Act, as amended by the act of July 3 1926, c. 751 §§ 6, 7 vested in the dependent 'widow' of said Aubrey D. Corkum. The plaintiff made a claim to said Bureau for such adjusted compensation, but her claim was disallowed by the Director of said Bureau on December 19, 1925, on the ground that she was not the widow of said Au-

brey D. Corkum; but said Director on January 20, 1926, suspended payments to the defendant (upon her claim which had previously been allowed) pending a decision in the courts of this Commonwealth, as to which of the parties is the widow of said Aubrey D. Corkum.   There still remains an unpaid balance of such adjusted compensation, amounting to more than $400.   Furthermore, under the Act of Congress of September 1, 1922, c. 302, 42 U. S. Sts. at Large, 834, U. S. Compiled Statutes § 8985 i, the 'widow' of Aubrey D. Corkum, he having been a veteran of the Spanish War, became entitled to a pension; and the defendant, claiming to be such widow, has claimed and received considerable sums of money as a pension thereunder and unless prevented will receive further sums thereunder in the future.   On August 30, 1924, the plaintiff filed a claim for pension under said act, which the commissioner of pensions rejected on January 15, 1926, on the ground that she was not the lawful widow of said Aubrey D. Corkum."

Pensions of this nature are in the eye of the law gifts from the government.   They may be awarded to such individuals, to be ascertained in such way and granted upon such terms, as the Congress may prescribe.   *Walton* v. *Cotton,* 19 How. 355, 358.   *United States* v. *Teller,* 107 U. S. 64, 68.   *Frisbie* v. *United States,* 157 U. S. 160, 166.   Where the law provides that claims for pensions are to be finally determined by administrative officers, that is the exclusive remedy.   *United States* v. *Babcock,* 250 U. S. 328, 331.   See *Tutun* v. *United States,* 270 U. S. 568, 576.   The remedies provided by the pension acts here pertinent are exclusive and final, and not open to review in Federal courts.   As to the "World War Adjusted Compensation Act," it is provided by the Act of July 3, 1926, c. 751, § 4 (b), 44 U. S. Sts. at Large, 828, "The decisions of the Secretary of War, the Secretary of the Navy, and the Director, on all matters within their respective jurisdictions under the provisions of this Act (except duties vested in them by Title VII) shall be final and conclusive."   As to Spanish War pensions, Act of September 1, 1922, c. 302, § 1, 42 U. S. Sts. at Large, 834, the provisions of the Judicial Code, § 24, subdivision Twentieth,

of Act of March 3, 1911, c. 231, 36 U. S. Sts. at Large, 1093, are applicable, viz., "nothing in this paragraph shall be construed as giving to either the district courts or the Court of Claims jurisdiction . . . to hear and determine claims for pensions."

With reference to a somewhat analogous act of Congress and subject, it was said in *Silberschein* v. *United States*, 266 U. S. 221, 225, "The statute which creates the asserted right, commits to the Director of the Bureau the duty and authority of administering its provisions and deciding all questions arising under it; and in the light of prior decisions of this Court, we must hold that his decision of such questions is final and conclusive and not subject to judicial review, at least unless the decision is wholly unsupported by the evidence, or is wholly dependent upon a question of law or is seen to be clearly arbitrary or capricious."

We are of opinion that these provisions of the acts of Congress, in the light of the grounds of decision in *United States* v. *Babcock*, 250 U. S. 328, preclude this court from attempting to impose upon the pension department of the Federal Government our views as to who is the "widow" of Aubrey D. Corkum under the pension laws of the United States. We cannot do this directly. We think it equally plain that we cannot do it by indirection through enjoining the defendant from making a claim or from accepting the gift. *Foot* v. *Knowles*, 4 Met. 386, 390. It will continue to be in the future as it has been in the past for the administrative officers of the United States to determine in the light of all matters presented to them from time to time who is entitled to receive pension payments as the widow of Corkum.

The same reasoning precludes the State court from compelling the defendant to account for the money already received by her under the pension laws. We have not before us a case where the defendant herself has been guilty of any fraud, and do not need to consider whether that would make any difference. The fraud from which both the plaintiff and defendant have suffered was that of Corkum. It does not appear that the defendant had any culpable participation in his fraud. The defendant, without fraud on her part,

has received payments in way of pension from the United States because its administrative officers have decided that she was entitled to them. Whether she was so entitled was a matter exclusively within the power of those administrative officers to decide. It would be in substance as much a review of their decision for a State court to compel her to account for the sums thus received, on the ground that she was not entitled to receive them, as to adjudicate directly by mandate to those administrative officers as to the person to whom they ought to make the payments. This conclusion is supported by the reasoning of several decisions. *Stokely* v. *De Camp*, 2 Grant (Penn.) 17. *Daily* v. *United States*, 17 Court of Claims, 144, 148. *United States* v. *Black*, 128 U. S. 40. *United States* v. *Raum*, 135 U. S. 200. *United States* v. *Scott*, 25 Fed. Rep. 470, 472.

6. It has been said commonly that courts of equity exercise jurisdiction, in the absence of express statutory enlargement of their powers, only for the protection of civil rights involving pecuniary considerations. It was said by Mr. Justice Gray in *In re Sawyer*, 124 U. S. 200, 210, "The office and jurisdiction of a court of equity, unless enlarged by express statute, are limited to the protection of rights of property." In *International News Service* v. *Associated Press*, 248 U. S. 215, 236, are found these words: "The rule that a court of equity concerns itself only in the protection of property rights treats any civil right of a pecuniary nature as a property right." If these be accepted as sound limitations upon jurisdiction in equity, we are of opinion that the plaintiff is entitled to relief.

Whether the plaintiff or the defendant is the widow of Corkum and has the right to represent herself as such, is a matter having important aspects of a pecuniary nature. So far as we are aware, no act of Congress contains any definition of "widow" or any declaration as to the jurisdiction by the law of which the widow shall be ascertained in case of dispute. Ordinarily the widow would be ascertained according to the law of the domicil of the deceased husband or of the matrimonial domicil. This is the implication of the statement in Dicey's Conflict of Laws (4th ed.), 126, to the

effect that "A widow retains her late husband's last domicil until she changes it." It is to be presumed that the proper administrative officers of the United States would desire to know what the courts of the State of the domicil of Corkum and of the plaintiff and of the defendant may decide as to the woman who is his widow. The findings of fact indicate that this is their attitude. The decision of that question has not merely social or sentimental features. The decision of that question also relates to a civil right which is the basis of a pecuniary claim and which has an immediate evidentiary value in pressing that pecuniary claim. *Lawrence* v. *Nelson*, 113 Iowa, 277, 279.

The result follows from what has already been herein decided that the plaintiff is the widow of Corkum according to the law of this Commonwealth. The domicil of Corkum, and of the plaintiff, and of the defendant was in this Commonwealth at the time of his death. The only matrimonial domicil of the plaintiff and Corkum was in this Commonwealth. The domicil of the plaintiff has at all times here relevant been in this Commonwealth. The Washington divorce is not recognized in this Commonwealth as of any validity.

Decree dismissing bill reversed. A decree is to be entered with appropriate recitals as to the domicil of the plaintiff, the matrimonial domicil of the plaintiff and Corkum, and the domicil of Corkum at the time of his death, declaring that the plaintiff is the widow of Aubrey D. Corkum according to the law of this Commonwealth, with costs.

*Ordered accordingly.*