In the Matter of the Application of EDWARD P. GEORGE, Appellant, to Review and Set Aside the Election of Directors of the HOLSTEIN-FRIESIAN ASSOCIATION OF AMERICA, Respondent.

Corporations — directors — increase in board of directors — proceeding to set aside election of board of directors on ground of invalidity of by-laws — certificate of increase in board of directors — when member of large association, incorporated under Membership Corporations Law, may not successfully attack validity of by-laws in force when he joined — meetings without the State — failure to object — amendment of by-laws so as to provide for election of delegates to convention instead of voting in person or by proxy for officers — waiver of right to object.

1. In a proceeding under section 32 of the General Corporation Law (Cons. Laws, ch. 23) to set aside an election of the board of directors of a cattle breeding association, national in scope and with a large membership, incorporated in this State by special act of the Legislature in 1885 and re-incorporated under the Membership Corporations Law in 1913, upon examination of the petitioner's objections, *held*, that even if in part sound, they are all objections which may be waived and that in the case of an association like the one under consideration they were waived by the members when they joined the association in so far as such objections existed at that time and by acquiescence thereafter through failure to make timely assertion of alleged rights.

2. Invalidity in an attempted increase of the board of directors of said association could not affect a subsequent valid increase of directors nor could it affect the force of any proceeding initiated or carried out by the directors elected before the vaild increase under by-laws which were never challenged by any member.

33

3. Assuming that a certificate specifying the increase of the number of directors may have been defective because not signed as required by the Membership Corporations Law, where, upon amendment of section 14 of said law so as to provide that the certificate should be signed by the " president and secretary of the meeting," the president and secretary of a meeting, thereafter held, did sign, acknowledge and file such a certificate, the increase in the number of directors became effective regardless of any defects in the earlier certificate, providing the resolution amending the by-laws was properly adopted.

4. An objection that this resolution was adopted at a meeting held outside the State, and that no proceedings held at such a meeting have any binding force against a member who did not participate in such proceedings, cannot be sustained where at the time the petitioner joined the corporation the by-law providing for meeting without the State was already in existence, such meetings were held at least every second year, and in fact the petitioner's application for membership was approved at a meeting held outside the State. Under these circumstances neither the plaintiff nor any other member, present or future, of the association may attack the validity of this by-law at least in so far as it has been acted upon and proceedings taken thereunder. (*Ormsby* v. *Vermont Copper Mining Co.*, 56 N. Y. 623, 625, distinguished.)

5. Although neither by the statute nor the by-laws and constitution of the association did the association have express authority to call special meetings outside of New York, where the effect of the by-laws and perhaps also of the statute was to permit the corporation to act as a corporation outside of the limits of this State, it might well be argued that the association could, therefore, hold a special meeting wherever an annual meeting could be held. Certainly a member who failed to object to the calling of a meeting outside of the State and failed to object to the validity of a by-law adopted at such meeting when the first election was held pursuant thereto, should be considered to have acquiesced in the procedure adopted.

6. A contention that in any event a by-law, adopted at such a special meeting, which provides for the election of delegates to an annual convention who shall elect the directors of the association, violates the petitioner's contractual right to vote in person or by proxy, cannot be sustained. After its re-incorporation under the Membership Corporations Law the association could by its by-laws provide " the manner of choosing * * * of its officers," and section 7 of that law may not be construed as creating any limitation upon the right of the association to change the manner in which the officers should be elected. The technical right to vote in person for the officers by each of the twenty-two thousand members of the

association is not so substantial that it is materially infringed when such member is given the right to vote for delegates who in turn elect the officers, especially where no member has asserted his alleged right by timely objection to the adoption of the new by-law or by a demand of the right to vote at the first election held under the new by-laws.

*Matter of George* v. *Holstein-Friesian Assn.*, 205 App. Div. 234, affirmed.

(Argued May 13, 1924; decided July 5, 1924.)

Appeal from an order of the Appellate Division of the Supreme Court in the fourth judicial department, entered May 2, 1923, which reversed an order of Special Term directing a new election of six directors of the Holstein-Friesian Association of America.

*Frank C. Laughlin, Henry W. Killeen* and *John A. Kelly* for appellant. The meetings of the Holstein-Friesian Association of America held without the State of New York prior to May 5, 1921, were illegal. The special act of the Legislature creating the association did not confer on the association the right to hold its annual meeting without the State of New York. (*Ormsby* v. *Vermont C. M. Co.,* 56 N. Y. 623; 1 Morawetz on Priv. Corp. 488; Taylor on Private Corp. § 382; 2 Machen Modern Law of Corp. § 1212; 3 Fletcher Cyclopedia of Corp. § 1635; Beale on Foreign Corp. § 322; 2 Purdy's Beach's Priv. Corp. [1905], §§ 670, 671; *Aspinwall* v. *Ohio & M. R. Co.,* 20 Ind. 422; *Duke* v. *Taylor,* 37 Fla. 64; *Jones* v. *Pearl Mining Co.,* 20 Col. 417; *Smith* v. *Silver Valley Mining Co.,* 64 Md. 85; *Miller* v. *Ewer,* 27 Me. 509; *Hodgson* v. *Duluth, etc., Co.,* 46 Minn. 454; *Missouri Lead Mining & Smelting Co.* v. *Reinhard,* 114 Mo. 218; *Camp* v. *Byrne,* 41 Mo. 525; *Webb & Co.* v. *Midway Lumber Co.,* 68 Mo. App. 546.) The meetings illegally held outside of the State, prior to May 5, 1921, were not made legal by the amendment to section 48 of the Membership Corporations Law by chapter 577 of the Laws of 1921, effective May 5, 1921. (*Jacobus* v. *Col-*

gate, 217 N. Y. 235; *People* v. *Wendel,* 217 N. Y. 260; *Rhodes* v. *Sperry & Hutchinson,* 193 N. Y. 223; *Boswell* v. *Security, etc., Co.,* 193 N. Y. 465; *Provident, etc.,* v. *Miller,* 179 N. Y. 227; *Germania S. Bank* v. *Suspension Bridge,* 159 N. Y. 362; *N. Y. & O., etc., R. R. Co.* v. *Van Horn,* 57 N. Y. 473.) The number of directors of said association was never legally increased from six to nine for the reason that no certificate with respect thereto was filed as required by section 14 of the Membership Corporations Law, and for the further reason that the by-law under which this increase was attempted to be effected was adopted at a meeting held outside of the State of New York. (*Cabana* v. *Holstein-Friesian Assn.,* 112 Misc. Rep. 212; 196 App. Div. 842; 233 N. Y. 644; *Matter of Westchester Trust Co.,* 186 N. Y. 215; *Matter of Dolgeville Electric Light & Power Co.,* 160 N. Y. 500; *Lewis* v. *Matthews,* 161 App. Div. 107.) The number of directors was never legally increased to sixteen, as the resolution voted at Philadelphia, June 4, 1919, purporting to increase the number of directors to sixteen was illegal and void. (*Cabana* v. *Holstein-Friesian Assn.,* 112 Misc. Rep. 262; 196 App. Div. 842; 233 N. Y. 644; *Lewis* v. *Matthews,* 161 App. Div. 107; *Matter of Westchester Trust Co.,* 186 N. Y. 215; *Matter of Dolgeville Electric Light & Power Co.,* 160 N. Y. 500; *Mitchell* v. *Forest City Printing Co.,* 107 Misc. Rep. 709; 187 App. Div. 743; *Jacobus* v. *Colgate,* 217 N. Y. 235; *People* v. *Wendel,* 217 N. Y. 260; *Rhodes* v. *Sperry & Hutchinson,* 193 N. Y. 223; *Boswell* v. *Security, etc., Co.,* 193 N. Y. 465; *Provident, etc.,* v. *Miller,* 179 N. Y. 227; *Germania S. Bank* v. *Suspension Bridge,* 159 N. Y. 362.) The present board of directors of the association is illegally constituted and elected. It is impossible to determine the directors who constitute the legal board of six. (*Cabana* v. *Holstein-Friesian Assn.,* 112 Misc. Rep. 262.) The applicant, Edward P. George, is not estopped from obtaining the relief prescribed by section 32 of the General Corporation Law. (*Matter of Brown,*

176 N. Y. 132; 66 App. Div. 259; 34 Misc. Rep. 556; *Matter of Haebler* v. *N. Y. Produce Exchange,* 149 N. Y. 414; *Reiss* v. *Supreme Conclave,* 177 App. Div. 847; *Burns* v. *Manhattan Brass Mutual Aid Association,* 102 App. Div. 467; *Kennedy* v. *Local Union,* 75 App. Div. 243; *People ex rel. Meads* v. *McDonough,* 8 App. Div. 596; *People ex rel. Ward* v. *Uptown Assn.,* 9 App. Div. 191; *Maxwell* v. *Theatrical Assn.,* 54 Misc. Rep. 619; *Poultney* v. *Bachman,* 31 Hun, 49; *Stein* v. *Marks,* 44 Misc. Rep. 140; *People ex rel. Schmidtt* v. *Saint Franciscus Benevolent Society,* 24 How. Pr. 216.)

*Nathan L. Miller, O. U. Kellogg, L. L. Babcock* and *C. M. Horn* for respondent.   Appellant is not entitled to any relief in this proceeding. (*Matter of Clarke,* 186 App. Div. 216; *Matter of Empire State Supreme Lodge,* 53 Misc. Rep. 353.)   The association had power to hold the meetings complained of outside the State. (*People* v. *Grant,* 208 Ill. App. 235; 283 Ill. 391; *Matter of School Board of Brooklyn,* 157 N. Y. 566; *Republic of Honduras* v. *Soto,* 112 N. Y. 310; *Bastian* v. *Modern Woodmen,* 166 Ill. 595; *People* v. *Hoyne,* 182 Ill. App. 42; *Sovereign Camp* v. *Fraley,* 94 Tex. 200; *People ex rel. Solomon* v. *Brotherhood,* 218 N. Y. 115.)   The adoption of the delegate system by unanimous vote was legal.   It did not deny nor in any way impair any right of appellant as a member. (*Miller* v. *New York,* 15 Wall. 478; *Looker* v. *Maynard,* 179 U. S. 46; *R. R. Co.* v. *Williams,* 199 N. Y. 108.)   The increase in the number of directors to sixteen was legally made. (*Kent* v. *Quicksilver Mining Co.,* 78 N. Y. 159; *Ormsby* v. *Vermont Copper Mining Co.,* 56 N. Y. 623; *Hanley* v. *Stutz,* 139 U. S. 417; *Lewis* v. *Matthews,* 161 App. Div. 107; *Wallace* v. *Walsh,* 125 N. Y. 26.)

Lehman, J.   Edward P. George has been a member of the Holstein-Friesian Association since 1918. . In August,

1922, he brought proceedings under section 32 of the General Corporation Law (Cons. Laws, ch. 23), complaining that the election of all the directors of the Association is invalid. He does not claim that there was any fraud or intimidation in their election; that any officer of the Association has failed in any duty in regard to such election imposed upon him under the constitution or by-laws of the Association; that the election of any director does not represent the will of a majority of the members, or that out of twenty-two thousand a single member made any objection at the time to the validity or propriety of the manner of holding the election of any director, or that since that time a single member has raised any such objections except the petitioner himself and a few others who feel aggrieved by the cancellation, by the present directors, of the records of one herd of cows on the ground that these records were fraudulent. The application is made solely on the ground that the provisions of the by-laws and of the constitution under which the Association attempted to elect its directors are invalid; and that because of such invalidity the election of all sixteen directors elected in accordance with the provisions of the constitution and by-laws and now in office should be set aside by the court; and a new election should be ordered not of sixteen directors but of six directors, which was the original number of the directors of the Association before the Association attempted to change that number by various amendments to its by-laws, which are now included in the petitioner's attack.

It is urged at the outset that section 32 of the General Corporation Law was not intended to give the court power, by summary order made upon the petition of a single member of an association of 22,000, to grant such relief as the petitioner now asks, even if the petitioner's contentions as to the invalidity of the provisions of the by-laws and constitution are all sound. We do not upon this appeal pass upon the scope or application of the

statute, for we have determined that the petitioner has no ground of complaint, but we point out that in passing first upon the question of whether the petitioner has any grievance, we indicate no opinion that justification of petitioner's complaint in whole or in part would lay the basis for relief in this proceeding.

The Holstein-Friesian Association was incorporated by special act of the Legislature in 1885. At its annual meeting in 1913 the Association voted to re-incorporate under the provisions of the Membership Corporations Law (Cons. Laws, ch. 35), and a certificate of re-incorporation was filed in the office of the Secretary of State. Prior to its re-incorporation the Association held all its annual meetings in the State of New York, but the first annual meeting of the Association after its re-incorporation was held at Chicago, Illinois, in June, 1914, and at that meeting the Association adopted by-laws clearly providing that annual meetings might be held outside the State of New York, and also providing for nine directors instead of six directors as provided in the original special statute of incorporation. In 1919 the annual meeting of the Association was held in Philadelphia, Pennsylvania, and at that meeting the by-laws were again amended to provide for sixteen directors and ten directors were elected at that meeting. A special meeting of the Association was held at St. Paul, Minnesota, in October, 1921, at which the by-laws were amended to provide for voting by delegates elected by the members of the Association by election districts, instead of voting by members in person or by proxy. The amended by-laws also refer to an " Annual Convention " of such delegates which was apparently intended to take the place of the annual meeting of members. The annual meeting or annual convention of the Association was held in 1922 at Kansas City, Missouri, and eight directors were then elected. The petitioner now urges that the election of these directors was invalid because the Association could not

· change its by-laws so as to provide for voting by delegates instead of voting by members in person or by proxy; that the change in the number of directors first from six to nine and then from nine to sixteen was nugatory because such changes were not made in the manner provided by law and that all proceedings and elections at meetings held without the State prior to May 5, 1921, are of no effect because the corporation as such could not act outside of the territorial limits of the State which created it, without the authority of that State.

It is unnecessary for us to consider whether the attempted change in the number of directors from six to nine through the adoption of new by-laws at the annual meeting in Chicago in 1914 was effective. The Association thereafter again attempted to change the number of directors from nine to sixteen, at the annual meeting held in Philadelphia in 1919, and for the reasons hereinafter set forth we have come to the conclusion that this change was valid and binding upon all the members of the Association, both past and future. Invalidity, if any, in the previous attempted increase in the number of directors could not affect the subsequent increase nor could it affect the force of any proceedings initiated or carried out by the directors elected between 1914 and 1918 under by-laws which were never challenged by any member.

Prior to the annual meeting held in Philadelphia, Pennsylvania, in 1919, notice was duly mailed to the members stating that an amendment would be proposed to the by-laws creating a board of sixteen directors and permitting the election of ten directors at that meeting. The by-laws were adopted, and ten directors were elected. A certificate specifying the increase of the number of directors signed by eleven directors was thereafter filed. Section 14 of the Membership Corporations Law required that a majority of the directors should sign such a certificate. We may assume that the corporation could

not elect additional directors until the certificate of the increase in the number of directors was signed and filed, and that the election of the directors chosen at the Philadelphia meeting in 1919 might have been set aside by timely application. We may further assume that the certificate signed by the eleven directors, including eight of the directors elected at that meeting, was defective because not signed by a majority of the legally elected board of nine directors, yet still the petitioner cannot at this time successfully urge such defect. In 1921 section 14 of the Membership Corporations Law (Cons. Laws, ch. 35) was amended to provide that the certificate should be signed by the " president and secretary of the meeting " and thereafter the president and secretary of the meeting held in Philadelphia in 1921, did sign, acknowledge and file such a certificate. Upon the filing of this certificate, regardless of any defects in the earlier certificate, the increase in the number of directors became effective, if the resolution amending the by-laws was properly adopted.

The objection is now urged that this resolution was adopted at a meeting held outside the State, and that no proceedings held at such a meeting have any binding force against a member who did not participate in such proceedings. This court has stated in the case of *Ormsby* v. *Vermont Copper Mining Co.* (56 N. Y. 623, 625) " that according to the settled law of corporations, neither stockholders nor directors can do a corporate act, out of the jurisdiction creating the corporation, which shall have any force to bind those who do not participate in it." In that case the corporation was a stock corporation organized for purposes of profit. In the present case the corporation is a membership corporation with a very large membership scattered through the country and having by-laws which specifically provide for the holding of annual meetings outside of the State. The decision of this court in *Ormsby* v. *Vermont Copper Mining Co.* (*supra*) is in accord with the general trend of decisions

in the other jurisdictions in this country, though the courts of some jurisdictions have reached this result upon different reasoning, but the same rule has not been generally applied to membership corporations like the Holstein-Friesian Association of America. Generally the courts of other jurisdictions have held that membership corporations not organized for profit may hold meetings outside of the State if permitted by the corporate by-laws, or on slight evidence they have found in the corporate charter some indication of a legislative intent to give such power to particular corporations. (See *Derry Council* v. *State Council Junior Order United American Mechanics,* 197 Penn. St. 413; *People* v. *Grant,* 283 Ill. 391; *Sovereign Camp Woodmen of the World* v. *Fraley,* 94 Tex. 200.) The determination of whether a corporation has such power must depend upon the statute under which such corporation is created and conflicting inferences might well be drawn from the provisions of the statutes of this State. We do not now decide which inferences are the strongest. We assume without either considering or deciding that question that the State has conferred no such power upon this corporation, but at the time the petitioner joined the corporation the by-law providing for meetings without the State was already in existence, and meetings without the State were held at least every second year; in fact the petitioner's application for membership was approved at a meeting held outside the State, and we hold that under these circumstances neither the plaintiff nor any other member, present or future, of the Association may attack the validity of this by-law at least in so far as it has been acted upon and proceedings taken thereunder.

The Association is, so far as concerns its membership and purposes, national in scope. Its by-laws have provided since 1914 that " any duly organized club * * * in any state or county * * * whose constituent members are residents of such state, county or counties, will be admitted to delegate membership." The by-laws

provided for annual meetings to be held " in any State," and that the place of the annual meeting " shall alternately be east and west of the eightieth meridian," showing a clear intent that meetings at least every second year should be held outside of the State. The constitution in unambiguous terms provides that " said annual meeting may be held outside of the State of New York." May any member, who has failed to raise any objection for the holding of such meetings outside of the State for eight years after the adoption of the by-laws and the constitution, or any member joining thereafter and agreeing to be bound by their terms, now object that meetings could not be held outside the State, and thus attack the validity of any action taken at such meetings? We think not. The by-laws and constitution form the contract between the members of the Association and the Association itself. Even though we have assumed upon this appeal, without, however, so deciding, that the State has not conferred upon the Association the power to act without the State, it does not follow that an individual contracting with the corporation upon the basis of the existence of such power may himself deny its existence. Action by membership corporations without the State has not been prohibited; at most the Legislature has not authorized it. No definite public policy against corporate action without the State can be deduced from the absence of such authority expressly conferred by the Legislature. On the contrary, the Membership Corporations Law expressly provides that certain corporations may conduct their annual meetings without the State (§ 48) and that the business and purposes of other corporations may be carried on beyond the limits of the State (§ 43). It is noteworthy that though this Association did not in 1919 technically come within the exact letter of either of these sections, it did come within their spirit and subsequently it received statutory authority to hold its own annual meetings outside of the State.

While undoubtedly corporate power rests upon legislative grant, yet not in every case will the courts permit either party to escape the obligations assumed by contract merely because a corporation which is a party to the contract has agreed to do acts beyond the legislative grant of power. " The rule, however, is well settled that the plea of *ultra vires* should not prevail when it would not advance justice, but, on the contrary, would accomplish legal wrong." (*Leslie* v. *Lorillard,* 110 N. Y. 519, 531.) We have here a case where a corporation of upwards of twenty thousand members scattered through the country makes a contract with all its members for the carrying on of the corporate business in a convenient manner and one suitable to membership corporations of national scope. The petitioner and others have joined, knowing that the affairs of the Association are being conducted in the manner prescribed by the contract, and they have agreed that they should continue to be so conducted in the future. Undoubtedly all proceedings of the Association which have been had at meetings held without the State are binding upon all such members, for they have acquiesced in the holding of such meetings. " It would be a most ruthless exercise of judicial power, as well as a stretch of judicial authority, to declare all their acts and proceedings beyond our borders null and void at the instance of some complaining or aggrieved member." (*Derry Council* v. *State Council, supra.*)

The limits upon the right of a corporation to contract with its members through by-laws have been defined by this court in *Matter of Brown* v. *Order of Foresters* (176 N. Y. 132); *Sternaman* v. *Met. Life Ins. Co.* (170 N. Y. 13) and there is no need of any restatement of such definition. The by-laws providing for meetings without the State form an integral and important part of the contract between the Association and its members and are intended to regulate the conduct of its business; no member joining the Association could have supposed that his application for member-

ship would be approved without his promise to adhere to
the contract; no single member of the Association can
refuse to abide by this by-law without materially affecting
the form of organization and procedure of the Association,
and no single member or group of members should be
permitted to raise the claim that this material element
of his or their contract with the Association is *ultra vires*
for the purpose of attacking the validity of the proceed-
ings conducted in accordance with such by-law. The
petitioner's claim herein is based upon the rights secured
through his membership contract, and he may not insist
upon these rights and at the same time refuse to be bound
by his own promise in consideration of which his mem-
bership rights were granted. Since the State has not
objected to meetings without the State; since no well-
defined public policy prohibits such meetings and since
the members of the Association have agreed in advance
of becoming members that such meetings may be held,
the court will not set aside any proceedings conducted
at such meetings.

The only question which we must still consider is
whether the election of the eight directors at the annual
meeting or convention in 1922 should be set aside because
such election was conducted under the by-law which
provided for voting by delegates instead of for voting
by the members in person or by proxy. This by-law
was adopted at a special meeting of the Association held
at St. Paul, Minnesota, on October 10, 1921. The objec-
tion that such a by-law violates the petitioner's contractual
right to vote in person or by proxy requires serious
consideration, but we may quickly pass upon technical
objections that the method used in the adoption of that
by-law was irregular. After the re-incorporation of the
Association, the method of amending the by-laws was
regulated not by the original statute incorporating the
Association but by the provisions of the Membership
Corporations Law (§ 8) and of the constitution and

by-laws of the Association. Under the terms of these provisions, by-laws could be amended at any duly called special meeting as well as at a general meeting. Before this meeting was held in St. Paul the Membership Corporations Law had been amended to authorize the association to hold its annual meetings outside of the State, but neither by the statute nor by the by-laws and constitution of the Association did the Association have express authority to call special meetings outside of New York. The effect of the by-laws and perhaps also of the statute was to permit the corporation to act as a corporation outside of the limits of this State, and it might well be argued that the Association could, therefore, hold a special meeting wherever an annual meeting could be held. Certainly a member who failed to object to the calling of a meeting outside of the State and failed to object to the validity of a by-law adopted at such meeting when the first election was held pursuant thereto, should be considered to have acquiesced in the procedure adopted and, for the reasons above stated, a member joining thereafter could not raise such objection.

The petitioner, however, urges strenuously that in any event a by-law which provides for the election of delegates to an annual convention who shall elect the directors of the Association violates his contractual right to vote in person or by proxy. We recognize that the right to vote for the officers of the Association may constitute a contractual right of which a member may not be deprived without his consent. In the present case the members still have the right to participate in the election of the officers by their indirect vote for delegates, though they have been deprived of the right to vote directly in person or by proxy. The statute under which the Association was originally incorporated expressly provided for voting in person or by proxy, but we are of the opinion that after its re-incorporation under the Membership Corporations Law the Association could

by its by-laws provide " the manner of choosing
* * * of its officers " and that section 7 of the
Membership Corporations Law may not be construed as
creating any limitation upon the right of the Association
to change the manner in which the officers should be
elected. The right of the members to vote was no different
from what it would have been if the Association had
been originally incorporated under the Membership
Corporations Law, and the power of the Association
to amend the by-laws to provide for indirect instead
of direct elections depends solely upon the question
whether the right to so amend has been reserved by
implication. We have before pointed out that this
Association has many thousand members living in many
States, and no system of direct voting under such cir-
cumstances can be entirely convenient or satisfactory.
Sections 42 and 44 of the Membership Corporations Law
provide that " associations * * * composed of more
than one thousand members and governed by a repre-
sentative body " may incorporate under the Membership
Corporations Law and may provide for " an annual elec-
tion by its members, of representatives or delegates either
at large or from special districts." It is not seriously
claimed that if at the time the petitioner joined the Asso-
ciation it was " governed by a representative body " it did
not have a reserved right to amend its constitution and
by-laws to provide for election of its officers by delegates,
except as such right might be limited by contract or by
statute but the petitioner claims that this Association
was not " governed by a representative body " within
the meaning of those words as used in the statute until
after it had provided for an annual convention or meeting
of delegates. We do not find it necessary to determine
now the meaning of these words. Assuming but again
not deciding that they were not applicable to this Asso-
ciation when the petitioner joined it, it still was the
evident intent of the statute to permit the incorporation

of unincorporated associations under a system of delegate election such as this Association provided in its by-law adopted in Minneapolis. It cannot be assumed that the Legislature intended to provide for the incorporating of existing unincorporated associations under a plan of organization suited to their needs and not permit an incorporated association to adopt a similar plan by amendment, otherwise valid, to its by-laws when by reason of its growth such a plan became needed or even convenient. In fact the petitioner does not dispute the right of the Association to adopt such a plan except in so far as it might infringe without their consent the contractual rights of its members; and it seems to us that no such rights have been infringed in the present case. The technical right to vote in person for the officers by each of the twenty-two thousand members of the Association is not so substantial that it is materially infringed when such member is given the right to vote for delegates who in turn elect the officers, especially where no member has asserted his alleged right by timely objection to the adoption of the new by-law or by a demand of the right to vote at the first election held under the new by-laws. (*People* v. *Grant*, 283 Ill. 391.)

For these reasons we decide that the orders of the courts below were correct. We reserve the consideration of all points which we have assumed without deciding until such time as they may arise in litigation against other corporations. We decide only that the petitioner's objections, even if in part sound, are all objections which may be waived and that in the case of an Association like the one under consideration they were waived by the members when they joined the Association in so far as such objections existed at that time and by acquiescence thereafter through failure to make timely assertion of alleged rights.

The orders should be affirmed, with costs.

All concur, except CARDOZO and POUND, JJ., who concur except in so far as the opinion discusses the validity of the change to a delegate system, and as to that concur in result on the ground that the appellant as a result of silence and inaction is not in a position to challenge the validity of the election.

Orders affirmed, etc.