HUGH BANCROFT & others *vs.* FRANK G. COOK & others.

Suffolk.    May 22, 1928.— August 16, 1928.

Present: RUGG, C.J., BRALEY, CROSBY, CARROLL, & SANDERSON, JJ.

*Equity Pleading and Practice*, Admissions in pleadings; Master: findings; Answer. *Evidence*, Admissions. *Corporation*, What constitutes. *Estoppel.* *Trust*, Construction of instrument creating trust, Identity of beneficiary. *Equity Jurisdiction*, To enforce trust. *Delta Upsilon Fraternity.*

Allegations in a bill in equity admitted in the answer are binding upon the parties, even though a master to whom the suit is referred finds facts contrary thereto; and exceptions to such findings by a master must be sustained.

An attempt to incorporate under a statute authorizing the formation of a corporation and conduct in good faith purporting to be a user of corporate power constitute at least a *de facto* corporation, the existence of which cannot be called in question in a suit in equity not prosecuted by the public authorities of the State of the alleged incorporation.

A declaration of trust required the trustees to maintain a club house for H chapter of the D. U. Fraternity. At the time of the establishment of the trust the fraternity was an unincorporated national association of chapters in several colleges. Later it became incorporated, after which the H chapter for several years sent delegates to its conventions, initiated men into the fraternity according to its ritual, and reported to the incorporated fraternity in prescribed form. After the incorporation, there was no reason for the continued existence of the unincorporated fraternity, and it ceased to function. Gradually and without formal action the H chapter came to be known as The D. U. Club, ceased to use the regular printed ritual prescribed by the fraternity for admitting new members and substituted therefor one omitting the pledge to the fraternity and other essential features, and ceased to report to the fraternity; but throughout the period it was one continuous organization. In 1923, the H organization refused to execute a lease containing a provision that the house should be occupied only by *bona fide* members in good standing of the fraternity and that all persons elected should be initiated into the fraternity in accordance with the form prescribed by it. In 1925, at a time when no undergraduate then occupying the club house had been initiated as a member of the fraternity, members of The D. U. Club, asserting themselves to be beneficiaries under the trust, brought a suit in equity to enjoin the trustees from compelling them to vacate the club house, and it was *held,* that

(1) The plaintiffs could not be heard to deny the validity of the incorporation of the national fraternity;

(2) Effect was given to the intent of the founders of the trust by treating the incorporated fraternity as the successor of the unincorporated fraternity and as, in legal contemplation, the fraternity referred to in the trust agreement;

(3) At the time of the filing of the bill, the plaintiffs, the H organization, known as The D. U. Club, were not a chapter of the D. U. Fraternity within the meaning of the declaration of trust, were not beneficiaries under the trust, and were not entitled to the relief they sought;

(4) The defendants were entitled to affirmative relief requiring the plaintiffs, The D. U. Club, to vacate the club house premises and not to interfere with the defendants in their management.

The national incorporated fraternity was permitted to intervene as a defendant in the suit above described. It appeared that within two years before the suit was brought, after the H organization had refused to execute a lease containing a provision that the house should be occupied only by *bona fide* members in good standing of the fraternity and that all persons elected should be initiated into the fraternity in accordance with the form prescribed by it, the national fraternity in accordance with its by-laws, undertook to suspend the H chapter and to transfer its functions to the executive council of the fraternity "including the

election and initiation of new members into the Fraternity of such Chapter," and that thereafter such council selected and caused to be initiated a group of undergraduates as the H chapter who were recognized by the fraternity as such; but they had no relation with The D. U. Club, had not occupied the club house, and were not parties to the suit. It further appeared that neither the intitials "D. U." nor the name "The D. U. Club" was adopted with the intention of deceiving or misleading any one or to induce any one to believe that the organization was connected in any way with the D. U. Fraternity, and that the use of the word "club," in view of the common and well recognized use of the word "chapter" to designate an undergraduate body affiliated with a general college fraternity, would not lead college and fraternity men generally to believe that this organization was a chapter of the D. U. Fraternity. *Held,* that

(1) The rights of the men selected and initiated by the executive council were personal; they were not represented by the national corporation, and, they not being parties to nor represented in the suit, the questions, whether they had been improperly excluded from the benefits of the trust and whether their rights had otherwise been invaded, were not considered nor determined;

(2) The facts prevented any relief to the national corporation with respect to the use of the initials "D. U." or the name "The D. U. Club."

BILL IN EQUITY, filed in the Superior Court on July 30, 1925, and described in the opinion.

The fourth paragraph of the trust instrument described in the opinion was as follows: "When in the judgment of said Trustees said fund shall by additions in any way and by accumulations of income have reached a sufficient amount, then they shall use the same or such part thereof as they shall think best in the purchase of land and buildings or of any of them or in the purchase or lease of land and the erection of buildings suitable for a Club House or home for said Chapter, [Harvard chapter of the Delta Upsilon Fraternity] and in the care and maintenance of the same, and in the payment of taxes, assessments and other charges incidental to the same."

The defendants in their answer sought the following affirmative relief:

"a. That said plaintiffs and said D. U. Club and all members of said Club, being represented by said plaintiffs, be ordered forthwith to vacate said premises at 396 Harvard Street, Cambridge, Massachusetts, and to deliver possession thereof to said Associates.

"b. That they be enjoined from interfering in any manner whatsoever with the possession, control or management of said house or said trust fund by said Associates and said trustees.

"c. That damages may be assessed against said plaintiffs for their wrongful use and occupation of said premises and that they be ordered to pay the same to said Associates."

A petition to intervene as a party defendant, presented by Delta Upsilon Fraternity, Inc., a New York corporation, alleging itself to be "historically and legally the successor of the Delta Upsilon Fraternity, so called, a voluntary fraternal association having chapters or branches among various colleges throughout the United States and referred to in" the bill and declaration of trust upon which it is based, was allowed by *Bishop*, J., on February 25, 1926. On March 24, 1926, the plaintiffs moved that the order allowing that petition be vacated. The motion was denied by *Morton*, J. The plaintiffs appealed from such denial.

The Delta Upsilon Fraternity, Inc., then filed an answer which closed with the following prayers:

"1. That the plaintiff's bill of complaint may be dismissed.

"2. That it may be decreed that the Harvard Chapter of Delta Upsilon Fraternity is subject to the jurisdiction and government of this defendant.

"3. That the plaintiffs individually, their agents and associates and all other persons, be permanently enjoined from using the name 'D. U. Club' or any combination of letters, words or symbols which might be confused with said Delta Upsilon Fraternity or tend to show a connection or association with said fraternity.

"4. That it may be decreed that the chapter at Harvard University of the Delta Upsilon Fraternity as said chapter may from time to time be recognized and determined by the constituted authorities of said fraternity is entitled to the use and enjoyment of said trust property, subject to the constitution and by-laws of said fraternity."

The suit was referred to a master. Material facts found by the master are stated in the opinion.

By order of *Cox*, J., the suit was reserved and reported to this court for determination.

*H. S. Davis*, (*R. K. Chase* with him,) for the plaintiffs.

*W. A. Dane*, for Frank G. Cook and others, trustees, and others.

*J. T. Pugh*, (*J. P. Russell* with him,) for Delta Upsilon Fraternity, Inc.

*W. M. Chadbourne & A. de Roode*, of New York, by leave of court filed a brief as *amici curiae*.

SANDERSON, J.    This bill in equity was filed July 30, 1925, by ten persons, in behalf of themselves and others too numerous to be made parties, claiming to be beneficiaries under a declaration of trust, and seeks to enjoin the defendants from taking any proceedings to eject the association represented by the plaintiffs from the club house occupied by them.    The defendants are the trustees under the declaration of trust and the Harvard Delta Upsilon Associates, a holding corporation organized and controlled by the trustees for the purpose of taking title to the land upon which the club house was later erected.    In the answer they ask to have the plaintiffs and the organization they represent ordered to vacate and enjoined from interfering with the possession, control or management of the premises or trust fund.    The plaintiffs contend that the order allowing the Delta Upsilon Fraternity, Inc. to intervene as a party defendant should not have been made.    The case was referred to a master.    In the Superior Court an interlocutory decree was entered sustaining certain exceptions to the master's report and overruling others, from parts of which all parties have appealed.    The case was reported for the entry of such final decree as law and justice require.

The trust was created in 1893, by the Harvard Chapter of the Delta Upsilon Fraternity.    The trust instrument is in the form of a subscription agreement whereby a building fund for the Harvard Chapter of that fraternity was created. The fifth section of this agreement provides: "If the said Chapter shall be dissolved or if for three successive years no members shall be elected into said Chapter, or if said Chapter shall sever its connection wtih the said Delta Upsilon Fra-

ternity" then the trustees are to transfer the property to
Harvard College for such purposes as the trustees shall desig-
nate, or, in default of such designation, for the general pur-
pose of the college.

In the bill it is alleged that the Harvard "association has
not been dissolved, has never for three successive years failed
to elect new members and has never severed its connection
with the Delta Upsilon Fraternity referred to in said declara-
tion of trust." In the answer the defendants admit that the
Harvard Chapter of Delta Upsilon Fraternity has never been
dissolved, has never for three successive years failed to elect
nominal members and has never severed its connection with
the Delta Upsilon Fraternity. Allegations in pleadings
bind the party making them. G. L. c. 231, §§ 87, 144.
*Flint* v. *Hubbard*, 1 Allen, 252. *Snowling* v. *Plummer Granite
Co.* 108 Mass. 100, 101. See *Boston Box Co. Inc.* v. *Shapiro*,
249 Mass. 373, 377; *Davis* v. *Green*, 263 Mass. 107, 112.
From the order striking out certain findings of the master
for the reason that they were not within the scope of the
pleadings no appeal was taken. Because of the admissions
in the pleadings, the court must disregard the master's find-
ings that no persons elected or initiated by the Harvard organ-
ization after September, 1916, became in fact members of
the Delta Upsilon Fraternity, and that after the graduation
of men initiated prior to that time, namely after June, 1919,
there ceased to be any undergraduate members of the Har-
vard organization who were in fact members of the Delta
Upsilon Fraternity. The exceptions of all parties to these
findings so far as they are now before us must be sustained.

The Delta Upsilon Fraternity, mentioned in the trust
instrument, was a national college fraternity formed as an
anti-secret society "for maintaining and diffusing liberal
principles, and for promoting intellectual, social and moral
improvements." In 1880 a group of undergraduates at
Harvard associated themselves together for the purpose of
seeking admission into the Delta Upsilon Fraternity as a
chapter thereof, and in 1881, by authority of the fraternity,
they were initiated into it by members from other colleges
delegated for that purpose, and were thereupon constituted

the Harvard Chapter of the Delta Upsilon Fraternity and recognized as such by the fraternity. The fraternity was organized as a voluntary association. In 1909 it purported to incorporate under the New York membership corporation law. The validity of that incorporation cannot be attacked in this proceeding An attempt to incorporate under a law authorizing the formation of the corporation and a user of the power in good faith constitute at least a *de facto* corporation. *Tulare Irrigation District* v. *Shepard,* 185 U. S. 1, 13.

The Harvard chapter, after being notified of the incorporation, for several years sent delegates to the conventions of the incorporated body. It initiated men into the fraternity in accordance with the prescribed ritual until 1916, and reported to the incorporated fraternity in prescribed form. After the ritual, hereinafter described, of The D. U. Club was adopted, men were reported to the fraternity as elected into membership in it until December, 1922, and other acts were done recognizing the national fraternity. Under these circumstances the plaintiffs, in so far as they base their right to occupy the property upon the alleged ground that they are a chapter of the fraternity, cannot be heard to deny in this suit the validity of the incorporation or to contend that the incorporated fraternity did not succeed to the rights and authority of the unincorporated association. *Butchers' & Drovers' Bank* v. *McDonald,* 130 Mass. 264. *Sanger* v. *Upton,* 91 U. S. 56, 64. *George* v. *Holstein-Friesian Association,* 238 N. Y. 513, 526. Moreover, if the unincorporated fraternity was dissolved and not succeeded by the New York corporation, the plaintiffs' organization, for that reason, would no longer be properly described as the Harvard Chapter of the Delta Upsilon Fraternity within the meaning of those words in the declaration of trust.

Written instruments creating a trust "are to be so construed as to give effect to the intent of the founder of the trust as manifested by the words used in the light of all the surrounding facts, unless inconsistent with some rule of law or repugnant to the terms of the instrument." *Eustace* v. *Dickey,* 240 Mass. 55, 72. When the purposes of the trust are considered, it must be held that the incorporation of the

fraternity to succeed the voluntary association and carry on the work for which the fraternity was organized would not defeat the trust. The purpose of such incorporation was to promote rather than defeat the objects for which the fraternity was created and was not so foreign to the general scheme of the organization as to be open to attack on that ground. After the incorporation there was no reason for the continued existence of the unincorporated fraternity, and it ceased to function. See *McFadden* v. *Murphy*, 149 Mass. 341, 342, 343. A complete cessation of the unincorporated society's action has a · tendency to prove an acquiescence in a corporate merger. *Mason* v. *Finch*, 28 Mich. 282, 287. If it be assumed that the members of the chapter residing outside New York who were initiated before the corporation was organized did not become members of it, still they cannot contend that they are now a chapter or members of a chapter of the unincorporated fraternity which no longer exists. In our opinion effect is given to the intent of the founders of the trust if the incorporated fraternity is treated as the successor of the unincorporated fraternity and as, in legal contemplation, the fraternity referred to in the trust agreement.

In the fall of 1916 the club members ceased to use the regular printed ritual prescribed by the fraternity for admitting new members and substituted therefor one omitting the pledge to the fraternity and other essential features. There was, in this new form of initiation, no suggestion that the member was being initiated into the fraternity, but each promised to adhere to the principles of The D. U. Club, gave a pledge of loyalty to the club and to its members, and was declared a member of it. No person admitted to membership in the local organization since 1916 has taken any pledge to the fraternity or been initiated by any form of proceeding substantially equivalent to the ritual prescribed by it. Notwithstanding the fact that since 1916 all initiations have been into "The D. U. Club," the officers of the club, purporting to act as officers of the chapter, until 1918 reported in writing to the general officers of the fraternity that all, or nearly all, of the men thus admitted to the club had been

duly initiated into the Delta Upsilon Fraternity, and delegates were sent to the fraternity conventions held in 1916 and 1917. At about this time the practice grew up of not reporting to the officers of the fraternity the names of men initiated into the club who expressed a desire not to become members of the fraternity. In December, 1922, the names of two members of each of the classes of 1924 and 1925 were reported to the fraternity as having been duly initiated into it; thereafter it was decided by the undergraduate members to report no further names, and when the master filed his report in November, 1927, no further names had been sent to the fraternity. Since the graduation of the class of 1925 there have been among the undergraduate members of this Harvard organization no men whose names have been reported to the fraternity. The master found that the men reported were recognized and enrolled as members of the fraternity and have continued to be recognized as such. Chapter dues assessed by it for men whose names were so reported were paid until 1924. About three fourths of the men recognized by the plaintiffs and their associates as members of the Harvard organization were initiated according to the ritual prescribed by the fraternity. The admission in the answer that the Harvard chapter has not failed for three successive years to elect nominal members into the fraternity, we take to mean that the defendants consider the men reported and enrolled after 1916, including the four reported in 1922, as elected into the Harvard chapter of the fraternity because of the recognition of them as members by it. The master stated that he was unable to find that the action of the undergraduate members in reporting to the fraternity that the men named had been duly initiated therein when in fact they had not been so initiated was taken with fraudulent intent, or with a purpose to deceive, or in bad faith. These conclusions were findings of fact on evidence not reported and cannot be disturbed. *Fairfield Holding Corp.* v. *Souther*, 258 Mass. 540, 544. He also found that during the entire period covered by the report the organization founded as the Harvard Chapter of the Delta Upsilon Fraternity and later known as "The D. U. Club" was one

continuous organization; that there is a continuous record of its meetings and no record of any formal vote changing the name to the D. U. Club, or otherwise changing the character of the organization; that the change in name and the various other changes in character of the organization took place gradually without formal action other than appears in the report and without the formation of any new or separate organization.

In 1923 the Harvard organization refused to execute a lease containing a provision that the house should be occupied only by *bona fide* members in good standing of the fraternity and that all persons elected should be initiated into the fraternity in accordance with the form prescribed by it. The defendant association then gave notice of its intention to lease the property to the fraternity but were restrained by order of court from carrying that purpose into effect. Thereupon the fraternity, in accordance with the provisions of its amended by-laws, which upon the master's findings were duly adopted, undertook to suspend the Harvard chapter and to transfer its functions to the executive council of the fraternity "including the election and initiation of new members into the Fraternity by such Chapter." Since that time this council has selected and caused to be initiated a group of undergraduates at Harvard as the Harvard chapter, and they have been recognized by the fraternity as such, the first election having been made in May, 1925, preceding the graduation of the last men reported to the fraternity as duly initiated. The men thus elected have had no relations with The D. U. Club and have not occupied or had any use of the club house. Notice to vacate within thirty days from June 30, 1925, was served by the defendant associates upon the occupants of the house, and to prevent action in pursuance of that notice this bill of complaint was filed.

The group of men selected and initiated by the executive council are not parties to this suit, and there is no party before the court having interests identical with theirs. The fact that the by-law under which they were selected was adopted at a convention of the fraternity gives the intervenor no authority to represent them as a party. Their

rights are personal and should not be determined in a proceeding to which they are not parties. For that reason the questions, whether they have been improperly excluded from the benefits of the trust and whether their rights have otherwise been invaded, cannot now be determined and on those issues we express no opinion. *Porter* v. *Rummery*, 10 Mass. 64, 69. *Sears* v. *Hardy*, 120 Mass. 524, 529, 531. *Cassidy* v. *Shimmin*, 122 Mass. 406, 409. *Lawrence* v. *Smith*, 201 Mass. 214, 215. *Shields* v. *Barrow*, 17 How. 130, 139. *Waseca County Bank* v. *McKenna*, 32 Minn. 468, 469. *Center Township* v. *Hunt*, 16 Kans. 430, 439. See also *Hills* v. *Putnam*, 152 Mass. 123. Questions important only because of their bearing on these issues, such as the legality of the suspension of the Harvard chapter, of the taking over of its functions by the executive council, and of the election and initiation of this group of undergraduates by the council, need not be considered.

If it be assumed that the Delta Upsilon Fraternity, Inc. was properly permitted to intervene, all relief sought by it must be denied. Its contention in behalf of the men elected by the executive council has already been disposed of. The court said, in *Corkum* v. *Clark*, 263 Mass. 378, 389, that "commonly . . . courts of equity exercise jurisdiction, in the absence of express statutory enlargement of their powers, only for the protection of civil rights involving pecuniary considerations." Injunctions in equity "are limited to the protection of rights of property." *In re Sawyer*, 124 U. S. 200, 210. It was said in *International News Service* v. *Associated Press*, 248 U. S. 215, 236, that this rule "treats any civil right of a pecuniary nature as a property right." The finding of fact that neither the initials D. U. nor the name D. U. Club was adopted with the intention of deceiving or misleading any one or to induce any one to believe that the organization was connected in any way with the Delta Upsilon Fraternity, together with the finding that the use of the word "club," in view of the common and well recognized use of the word "chapter" to designate an undergraduate body affiliated with a general college fraternity, would not lead college and fraternity men generally to

believe that this organization was a chapter of the Delta Upsilon Fraternity, requires the court to refuse to issue a restraining order concerning the use of the name D. U. Club, even if there were no other objection to granting such relief. See *Weener* v. *Brayton*, 152 Mass. 101, 106; *Carney Hospital* v. *McDonald*, 227 Mass. 231, 234; *Supreme Lodge Knights of Pythias* v. *Improved Order Knights of Pythias*, 113 Mich. 133, 137. Its other prayers present no sufficient cause for the intervention of a court of equity, either because the facts found do not justify such action or because they relate to matters outside the scope of the issues raised in the bill and answer. See *Dillaway* v. *Burton*, 256 Mass. 568, 576.

The finding and ruling that when the bill was filed the Harvard organization represented by the plaintiffs, then occupying the club house, was not a chapter of the Delta Upsilon Fraternity and was not the Harvard Chapter of the Delta Upsilon Fraternity within the meaning of the declaration of trust, we treat as referring to the organization as a whole. We reach the same conclusions upon the facts properly found by the master under the pleadings. No undergraduate then occupying the club house had been initiated a member of any fraternity, nor reported to, accepted or enrolled by, the officers of the fraternity. Neither they nor others who are in like position with reference to initiation and recognition by the fraternity are members of the Harvard Chapter of the Delta Upsilon Fraternity within the meaning of the trust instrument.

The bill is brought in behalf of the Harvard organization as a whole and seeks to enjoin any interference with that body in the use and enjoyment of the premises. The beneficiary of the trust is the Harvard Chapter of the Delta Upsilon Fraternity. The chapter must be connected with and be a part of the fraternity. It cannot subsist independently. The master has found, and the plaintiffs contend, that they and their associates are but one organization. The plaintiffs recognize all elected by the organization as its members and entitled to the same privileges. They represent one indivisible unincorporated body. See *In re Drummond*, [1914] 2 Ch. 90, 97.

Upon the findings of the master the organization represented by the plaintiffs, notwithstanding its continued existence, has so repudiated the principles of the fraternity and changed in character that it has ceased to be a chapter of the fraternity within the meaning of the trust agreement even if a connection between the two bodies has been maintained as stated in the answers. It is no longer the beneficiary designated in that agreement and the relief which the plaintiffs seek must be denied.

For reasons stated the interlocutory decree is to be modified by sustaining the plaintiffs' exceptions numbered 3 and 4, and so much of the defendants' exception numbered 3 and the intervenor's exception numbered 2 as relate to the findings of fact as to membership in the fraternity. In all other respects that decree is affirmed.

A decree may be entered dismissing the bill, denying affirmative relief to the intervenor, and granting the defendants the relief requested in their prayers (a) and (b), with costs.

*Ordered accordingly.*