[892 NE2d 850, 862 NYS2d 457]

In the Matter of SAMBASIVA RAO VENIGALLA et al., Respondents,
v DATTATREYUDU NORI et al., Appellants. ATTORNEY GEN-
ERAL OF STATE OF NEW YORK, Intervenor.

Argued May 28, 2008; decided July 1, 2008

**POINTS OF COUNSEL**

*Hodgson Russ LLP,* New York City (*Daniel S. Steinberg, Joseph P. Goldberg* and *Jacquelyn R. Trussell* of counsel), for appellants. I. The Appellate Division's decision was error as a matter of law and should be reversed insofar as it invalidated the post-1970 bylaws and enforced the 1970 bylaws. (*Matter of Alcott Staff Leasing v New York Compensation Ins. Rating Bd.,* 224 AD2d 54; *Town of Somers v Camarco,* 284 App Div 979, 308 NY 537; *Matter of Berich v Ithaca Police Benevolent Assn., Inc.,* 23 AD3d 904; *Matter of Salino v Cimino,* 1 NY3d 166; *Hildreth-Henry v Henry,* 27 AD3d 419; *Fascaldi v Fascaldi,* 209 AD2d 576; *Matter of Salahuddin v Coughlin,* 222 AD2d 950; *Matter of Roanoke Sand & Gravel Corp. v Town of Brookhaven,* 24 AD3d 783; *Matter of Conte v Town of Norfolk Zoning Bd. of Appeals,* 261 AD2d 734; *Matter of Ball v New York State Dept. of Envtl. Conservation,* 35 AD3d 732.) II. The 1970 bylaws are invalid to the extent they conflict with Religious Corporations Law article 9 and the Hindu Temple Society of North America's certificate of incorporation. (*Matter of Herbert H. Lehman Coll. Found. v Fernandez,* 292 AD2d 227; *Keogh v Connolly,* 235 AD2d 241; *Christal v Petry,* 275 App Div 550.) III. The court's imposition of elections on the Hindu Temple Society of North America (Temple) and the supervision and determination by a court-appointed referee of membership in the Temple for purposes of voting in an election of trustees violated the Free Exercise Clauses of the United States and New York Constitutions. (*Matter of Congregation Yetev Lev D'Satmar Inc. v Kahana,* 9 NY3d 282; *Serbian Eastern Orthodox Diocese for United States and Canada v Milivojevich,* 426 US 696; *Rector, Churchwardens &*

*Vestrymen of Church of Holy Trinity v Melish,* 3 NY2d 476; *Matter of Venigalla v Alagappan,* 307 AD2d 1041; *Rector, Church Wardens & Vestrymen of St. Bartholomew's Church in City of N.Y. v Committee to Preserve St. Bartholomew's Church,* 56 NY2d 71.) IV. The Religious Corporations Law's enumeration of rights and powers for particular religious denominations improperly prefers those established religions in violation of the Establishment Clause of the United States Constitution and violates the rights of the Hindu Temple Society of North America and its followers to the free exercise of religion and the equal protection of the laws. (*Cantwell v Connecticut,* 310 US 296; *Catholic Charities of Diocese of Albany v Serio,* 7 NY3d 510; *Larson v Valente,* 456 US 228; *Everson v Board of Ed. of Ewing,* 330 US 1; *Grumet v Pataki,* 93 NY2d 677, 528 US 946; *Church of Lukumi Babalu Aye, Inc. v Hialeah,* 508 US 520; *Morris v Scribner,* 69 NY2d 418; *Matter of Saints of God In Christ Inc.,* 20 Misc 2d 532.)

*Chittur & Associates, P.C.,* New York City (*Krishnan S. Chittur* of counsel), for Dattatreyudu Nori and others, respondents. I. The 1970 bylaws were properly upheld and enforced. (*Held v Kaufman,* 91 NY2d 425; *Ioele v Wal-Mart Stores,* 290 AD2d 614; *Crowther v City of New York,* 262 AD2d 519; *Matter of Board of Educ. of Roosevelt Union Free School Dist. v Board of Trustees of State Univ. of N.Y.,* 185 Misc 2d 704; *Hildreth-Henry v Henry,* 27 AD3d 419; *Fascaldi v Fascaldi,* 209 AD2d 576; *Matter of Salahuddin v Coughlin,* 222 AD2d 950; *St. Vincent's Hosp. & Med. Ctr. v Nationwide Mut. Ins. Co.,* 42 AD3d 523; *Charney v North Jersey Trading Corp.,* 150 Misc 2d 849; *Hauck Food Prods. Corp. v Stevenson & Co., Inc.,* 203 App Div 308.) II. Appellants' statutory and constitutional challenges should not be considered since they were never raised before the Supreme Court. (*Martin v New York Hosp.,* 295 AD2d 485; *Bingham v New York City Tr. Auth.,* 99 NY2d 355; *Matter of Salino v Cimino,* 1 NY3d 166; *Matter of Dowsett v Dowsett,* 172 AD2d 610; *Matherson v Marchello,* 100 AD2d 233; *Matter of Kalkstein v DiNapoli,* 228 AD2d 28; *Matter of Steel v Department for Aging of City of N.Y.,* 14 AD3d 423; *Matter of Goodnature Prods. [Guangping Huang],* 300 AD2d 1050; *Matter of Fotopoulos v Berman,* 298 AD2d 698.) III. In any event, the 1970 bylaws do not contravene the Religious Corporations Law. (*Matter of Kaminsky,* 251 App Div 132, 277 NY 524; *Kroth v Congregation Chebra Ukadisha Bnai Israel Mikalwarie,* 105 Misc 2d 904; *Watt Samakki Dhammikaram, Inc. v Thenjitto,* 166 Misc 2d 16; *Mat-*

*ter of New York Soul Clinic,* 208 Misc 612; *Diamond v Art Contr. Co., Inc.,* 147 Misc 88; *Witthaus v St. Thomas' Church,* 161 App Div 208; *Emmett v American Equit. Assur. Co. of N.Y.,* 194 Misc 529; *New York Dist. of Assemblies of God v Calvary Assembly of God,* 64 AD2d 311; *New York Annual Conference of Methodist Church v Nam Un Cho,* 156 AD2d 511; *St. Matthew Church of Christ, Disciples of Christ v Creech,* 196 Misc 2d 843.) IV. Appellants' and the Attorney General's construction of the Religious Corporations Law contravenes the Not-For-Profit Corporation Law. (*Croughan v New York Mut. Benevolent Socy.,* 179 App Div 211; *Matter of Hausner v Hopewell Prods.,* 22 Misc 2d 969; *Islamic Ctr. of Harrison v Islamic Science Found.,* 262 AD2d 362.) V. The Hindu Temple Society of North America has a First Amendment right to have an elected board and open membership "irrespective of religion." (*Karageorgious v Laoudis,* 271 AD2d 653; *White Riv. Amusement Pub, Inc. v Town of Hartford,* 481 F3d 163; *Matter of Congregation Yetev Lev D'Satmar Inc. v Kahana,* 9 NY3d 282.) VI. Appellants' and the Attorney General's construction renders the Religious Corporations Law unconstitutional. (*Russian Church of Our Lady of Kazan v Dunkel,* 67 Misc 2d 1032; *Kedroff v Saint Nicholas Cathedral of Russian Orthodox Church of North America,* 344 US 94; *Bernal v Fainter,* 467 US 216; *DeSousa v Reno,* 190 F3d 175; *Nordlinger v Hahn,* 505 US 1; *Sugarman v Dougall,* 413 US 634; *In re Griffiths,* 413 US 717; *Examining Bd. of Engineers, Architects & Surveyors v Flores de Otero,* 426 US 572; *Graham v Richardson,* 403 US 365; *Soskin v Reinertson,* 353 F3d 1242.)

*Krishnamurthy Aiyer,* respondent pro se. Respondents have denied members of the Hindu Temple Society of North America any right to elect their own trustees and to seek accountability in all financial matters.

*Andrew M. Cuomo, Attorney General,* New York City (*Justin R. Long, Barbara D. Underwood* and *Benjamin N. Gutman* of counsel), in his statutory capacity under Executive Law § 71. I. Religious Corporations Law § 182 requires article 9 corporations like the Hindu Temple Society of North America to have a self-perpetuating board even if the bylaws provide for elections by the membership. (*People v Felix,* 58 NY2d 156; *Consumers Union of U.S., Inc. v State of New York,* 5 NY3d 327; *Matter of O'Brien v Spitzer,* 7 NY3d 239; *Matter of General Elec. Capital Corp. v New York State Div. of Tax Appeals, Tax Appeals Trib.,*

2 NY3d 249; *Matter of Robert J.,* 2 NY3d 339; *Robertson v Bullions,* 11 NY 243; *Benintendi v Kenton Hotel, Inc.,* 294 NY 112; *Matter of Burkin [Katz],* 1 NY2d 570.) II. The Religious Corporations Law does not violate the Free Exercise Clause or Establishment Clause of the Federal Constitutions. (*Catholic Charities of Diocese of Albany v Serio,* 7 NY3d 510, 8 NY3d 866; *Matter of Congregation Yetev Lev D'Satmar Inc. v Kahana,* 9 NY3d 282; *Morris v Scribner,* 69 NY2d 418; *Cutter v Wilkinson,* 544 US 709; *Larson v Valente,* 456 US 228; *City of New York v State of New York,* 76 NY2d 479.)

## OPINION OF THE COURT

Smith, J.

The Hindu Temple Society of North America was incorporated in 1970 under article 9 of the Religious Corporations Law. In the same year, it adopted bylaws calling for the members of the Society to elect its trustees. Those bylaws were never implemented, and were forgotten until 2001, when petitioners rediscovered them and demanded that the prescribed elections take place. The Appellate Division upheld petitioners' demand.

We hold that the Appellate Division erred for two reasons: the requirement of elections for trustees is inconsistent with the Religious Corporations Law, and therefore invalid; and, in any event, the 1970 bylaws had been abandoned by 2001.

### I

The Society's certificate of incorporation was filed with the Department of State on February 17, 1970. It says that the Society is organized "[p]ursuant to Article 9 of the Religious Corporations Law." The certificate names seven trustees. On May 21, 1970, the Society applied to the Internal Revenue Service (IRS) for a tax exemption, attaching to its application a set of bylaws. The Appellate Division found that these bylaws were adopted by the Society in 1970, and we accept that finding as supported by the record.

The 1970 bylaws define the "General Body" as "all members in good standing who have paid their annual dues" and provide that "[t]he members of the General Body shall elect members of the Board of Trustees" for three-year terms, at meetings to be held annually. The 1970 bylaws also provide that they can be amended only by a vote of the General Body. So far as the record shows, however, neither these provisions nor any others in

the 1970 bylaws were ever implemented, from May 21, 1970 until after the commencement of this proceeding in 2001. During that time, no one connected with the Society, so far as the record shows, ever mentioned the 1970 bylaws or appeared to be aware of their existence.

From the inception of the Society, it was in fact governed by a self-perpetuating board of trustees. The trustees named in the certificate of incorporation added others to their number, and when vacancies later occurred they were filled by a vote of the board. A memorandum prepared in 1975 describes the "Interim Organizational Structure" of the Society, making no reference to the 1970 bylaws and containing no provision for election of trustees by members. A 1977 report, directed at devising a "more permanent framework," says: "It is most fortunate that the society did not adopt the recognized methods of cultural societies with annual elections, change of officers etc." In 1978, the board adopted new bylaws that said "[t]he Board of Trustees will exercise the function of final selection and appointment" of its own membership. The Society operated under the 1978 bylaws, as amended by the trustees from time to time, until after this dispute arose; none of the amendments disturbed the board's power of "final selection and appointment." There is no record that anyone, before the 21st century, expressed any doubt that the 1978 bylaws were validly adopted.

The belief of the Society's leadership that the Society should and did have a self-perpetuating, not an elected, board was not kept secret. An article entitled "Building Temples or Community Centres in Modern Times," written in 1977 by one of the Society's founders, held up the Society's temple as a model. The article warned that "it will be self-defeating" if a temple "is organised as a cultural society with annual elections, [and] continuous change in officials . . . . High level people will not join if they have to stand for elections. Decision-making with clear-cut responsibility are [sic] difficult if subjected to general body meetings." In a letter written many years later, after this litigation had begun, one of the petitioners in this case conceded—unhappily, and in provocative terms—the reality that had long existed: "The temple was managed in a totalitarian form from the very beginning."

Petitioners, members of the Society who disagreed with certain actions of its management, began this proceeding in

2001. The petition makes no mention of the 1970 bylaws, though it does assert that the Society's members have "a valid right to participate in the governance" of the Society. The petition, relying on various provisions of the Not-For-Profit Corporation Law, sought removal of the board of trustees, appointment of a receiver, and other relief. While the case was pending before Supreme Court, petitioners discovered the 1970 bylaws and submitted them to the court as an alternative ground for the relief they sought.

In 2002, Supreme Court granted petitioners certain relief, but refused to dissolve the board or appoint a receiver. Supreme Court treated the bylaws adopted in 1978 and thereafter as valid amendments to the 1970 bylaws. Petitioners appealed. The Appellate Division, in a 2003 order, found "no evidence in the record that the required procedures were ever followed to amend the 1970 bylaws" and held that "Supreme Court should have voided the bylaws postdating 1970" (*Matter of Venigalla v Alagappan*, 307 AD2d 1041, 1042 [2d Dept 2003]). Since none of the trustees had been elected as the 1970 bylaws required, the Appellate Division removed the board and directed "the appointment of a referee to direct and oversee a reorganizational meeting of the Society for the purpose of electing a new Board" (*id.* at 1043).

Supreme Court's attempts, on remand, to carry out the Appellate Division's 2003 order generated years of bitter litigation that need not be described here. At length, a new election was held—resulting in a board virtually unchanged from the old one. Despite their success in the election, the trustees appealed to the Appellate Division from a 2006 judgment confirming its results, arguing in substance that the election should never have been held. The Appellate Division affirmed the judgment in 2007 (41 AD3d 725 [2d Dept 2007]). We granted leave to appeal from the Appellate Division's 2007 order of affirmance, bringing up for review its 2003 order directing an election. We now reverse.

## II

The Religious Corporations Law, providing rules for the governance of religious bodies, contains articles applicable to many specific denominations, but not to the Hindu faith. A Hindu group that wants to become a religious corporation may, like other groups not specifically provided for, choose to incorporate either under article 9 ("Free Churches") or article 10 ("Other Denominations"). The Society chose article 9.

An important difference between the two articles is that, while the trustees of article 10 corporations are elected by the body's members (*see* Religious Corporations Law §§ 191, 192, 194, 195, 199), article 9 corporations have self-perpetuating boards. The original trustees of an article 9 entity are named in its certificate of incorporation (Religious Corporations Law § 180), and Religious Corporations Law § 182 provides: "Any vacancies occurring in the said board of trustees shall be supplied by the remaining trustees." Article 9 makes no provision for any elections, other than votes of the trustees themselves. Indeed, the only. "members" referred to in article 9 are the members of the board of trustees.

The provisions of the Society's 1970 bylaws that called for election of trustees by the "General Body" contradicted article 9 and were invalid from their inception. The Appellate Division erred in requiring the conduct of an election pursuant to those provisions.

That is enough to require invalidating the election, but we examine also the status of the 1970 bylaws as a whole—not just the provisions for election of trustees—so that the Society can know what its governing document is. We conclude that the 1970 bylaws have long been defunct. As the court said in *Pomeroy v Westaway* (189 Misc 307, 310 [Sup Ct, NY County 1947], *affd* 273 App Div 760 [1st Dept 1947]), "nonusage of a by-law, continuing for a considerable length of time, and acquiesced therein, will work its abrogation." There could hardly be a clearer case than this one for the application of that rule.

While the Appellate Division was justified in finding, based on the submission of the 1970 bylaws to the IRS, that the Society adopted those bylaws in 1970, the record shows that they fell into complete desuetude for the next three decades. By 1975, those running the Society's affairs had apparently forgotten (if they ever knew) that the 1970 bylaws existed. The Society was run in accordance with bylaws first adopted in 1978, which provided a different approach to governance than the 1970 bylaws, and all members of the Society knew or had the means of knowing this. Until 2001, none protested. To allow petitioners to resuscitate the 1970 bylaws when they finally rediscovered them would be unwise and unfair (*see Matter of George [Holstein-Friesian Assn. of Am.]*, 238 NY 513, 522 [1924]).

Accordingly, the order of the Appellate Division should be reversed, with costs, and the case remitted to Supreme Court for proceedings consistent with this opinion.

Chief Judge KAYE and Judges GRAFFEO, READ, PIGOTT and JONES concur; Judge CIPARICK taking no part.

Order reversed, etc.